**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

FILED

NOV X 6 2009

NOV 6 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**INTERNATIONAL GOLDEN FOODS, INC.,**
    an Illinois corporation,

    **Plaintiff,**

**v.**

                             **CIVIL ACTION NO.**

**HYSON USA, INC.,**
    an Illinois corporation,

    **Defendant**

09CV6999
JUDGE ANDERSEN
MAG. JUDGE COLE

**COMPLAINT FOR TRADEMARK INFRINGEMENT, THEFT OF**
**CORPORATE IDENTITY, COUNTERFEIT FOOD PRODUCT MARKETING,**
**CYBER-IDENTITY THEFT, UNJUST ENRICHMENT, FALSE DESIGNATION**
**OF ORIGIN, TRADE NAME INFRINGEMENT, TRADE DRESS**
**INFRINGEMENT, AND FOR RESTRAINING ORDER,**
**INJUNCTION AND OTHER RELIEF INCLUDING MONETARY DAMAGES**

    **NOW COMES** INTERNATIONAL GOLDEN FOODS, INC., by and through its

attorneys, and states as follows:

**PARTIES**

1.    INTERNATIONAL GOLDEN FOODS, INC., is an Illinois corporation in good standing,

having a principal place of business at 819 Industrial Drive, Bensenville, Illinois 60106.

It is the owner of intellectual property, and is in the business of selling high quality food

products that are imported from various nations and distributed throughout the world.

2.    On information and belief, HYSON USA, INC., is an Illinois corporation having a

business address of 612 Supreme Drive, Bensenville, IL 60106, and is in the business of

selling food products from a variety of locations that are foreign or domestic to the US,

and sells those products throughout the United States and more particularly in the

Chicago area of Illinois.

3.     On information and belief HYSON USA INC., has been and continues to be marketing certain food items to a variety of commercial establishments located in the Chicago land area, including the following entities, all of which are multi-location grocery chain companies located in the Chicagoland Area: Garden Fresh Market, of 1786 Hintz Rd. Wheeling IL; Joe Capputo & Sons Fruit Market, 959 E. Oakton, Des Plaines, IL 60018; and, Michaels Fresh Market, 856 S. Rte 59, Naperville, IL 60540.  These stores are not named as defendants, for the simple reason that they, like the purchasing public were duped by the trademarks, and information on tthe labels indicating that the juice in question in this suit originated with International Golden Foods.

## NATURE OF THIS ACTION AND JURISDICTION

4.     This is an action for trademark infringement, dilution, unfair competition, trade dress theft, theft of trademark, common law trademark infringement, corporate identity theft, theft of corporate name, unfair competition, and trade disparagement under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (The Lanham Act), and for trademark infringement, dilution, unfair competition, unjust enrichment, cyber-identity theft, marketing of counterfeit food products, trade disparagement, unjust enrichment, cyber-identity theft, under the common law of Illinois, and the statutes of Illinois and in other states where the defendant conducts its illegal activities.

6.     This Court has jurisdiction over the subject matter of this action under 15 U.S.C. §1121, 28 U.S.C. §§ 1331 and 1338 (a) and (b), and has supplemental jurisdiction under 28 U.S.C. §1367(a) over the Plaintiffs claims under state law.

7.     The matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states due to the conduct of the

business by the defendant in interstate and international commerce.  Accordingly, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (a) (3).

## THE TRADEMARKS OF INTERNATIONAL GOLDEN FOODS

8.    Golden Foods is one of the best food distributors in the business. Its name, which is on every product is based upon its product meeting the commonly understood appellation of exceeding the "Golden Standard" for quality of ingredients and for food safety.  It is known in the international and the local marketplace for its fine products, including its GOLDEN® Rices and its GOLDEN RICE™, its GOLDEN® candies and chocolates, its GOLDEN ® vegetables, sauces, beans, fruits and pickles, its CRISPA® pasta, its OLIVE TREE® oils, and most pertinently, its NAR® pomegranate juice.

9.    Since 2003, Golden Foods has exclusively and continuously used the highly distinctive, and unique trademark NAR® in connection with pomegranate juice in the commerce of the United States, and more particularly within the Chicagoland area within the geographic boundaries of the United States District Court for the Northern District of Illinois.

10.   Based on its US Trademark Registration, Golden Foods has priority in the NAR trademark for pomegranate juice under  Registration No. 3,260,258, issued July 10, 2007, with a date of first use at least as early as February 12, 2003.

11.   Golden Foods has exclusively licensed and controlled all use of the NAR® trademark, including controlling the packaging, source, content, quality and distribution of its distinctive NAR® Pomegranate Juice.  Golden Foods holds the entire right, title and interest to the NAR trademark.

12.   Golden Foods has exclusively used its corporate identity common law trade identity of International Golden Foods, since the date of July 1, 1986.  Since that date, Golden

Foods has applied its corporate name to its products, its advertising, its web sites, its business invoices and correspondence and its packaging.  Golden Foods holds the entire right title and interest in the corporate name "International Golden Foods", and uses that corporate identity as its trademark which identifies Golden Foods, and which use, by identifying Golden Foods helps customers identify the origin, sponsorship and affiliation of product bearing its corporate name.

13.   At no time in the past has International Golden Foods licensed its corporate name for use by any other corporation or business entity in the United States.

14.   Since its date of first use of the NAR® Pomegranate Juice trademark, Golden Foods has not licensed the use of the NAR® trademark to any corporation of business entity in the state of Illinois or in any other state except for the limited license to sell the product given to Golden Foods distributors and sales outlets using only the label with all trademark and trade dress that is approved by and issued by Golden Foods.  And, the label on the infringing counterfeit Nar pomegranate juice contains the "OU"® trademarked symbol, which Golden Foods has not allowed any entity to print onto its labels for pomegranate use in connection with its superior and delicious NAR® pomegranate juice because Golden Foods has no contract with the Orthodox Union, the controlling inspection for Kosher foods that applies the "OU"® trademark only to goods where the vendor has an inspection contract and certification agreement with the Orthodox Union.

15.   Since date at least as early as February 12, 2003, International Golden Foods has used a bar code having the UPC number of 01919505009 which is exclusively applied to its NAR® Pomegranate Juice.

16. Since a date of at least as early as January 1, 2000, Golden Foods alone has used the web addresses of "www.goldenfood.com" and "www.goldenfoods.com", and has not ever licensed the use of that web address to any corporation or other business entity within the United States or elsewhere.

17. Golden Foods has used the NAR® trademark in conjunction with a variety of label variants, all of which are exclusive to Golden Foods, and which label variants have not be licensed for use by any other corporation or business entity within the United States or other jurisdiction, except for the limited license to advertise and use the exact label configuration in conjunction with the sale and offer for sale of the Golden Foods NAR® pomegranate juice.

18. The NAR® trademark and associated labeling and information on the label have been primarily associated with the best quality pomegranate juice, made without additives or other preservatives, just as the name INTERNATIONAL GOLDEN FOODS, is synonymous with the highest quality food from any source.

19. Many hundreds of thousands of dollars in sales of the NAR® juice are at stake here, and if a consumer thinks that the "counterfeit Nar" juice is the real NAR® juice, their opinion of Golden Foods might make many times that amount in jeopardy, for the poor quality of the counterfeit Nar juice could put consumers off from purchasing any Golden Foods product.

20. An average of over $50,000 has been spent in marketing NAR® pomegranate juice by Golden Foods per year in the most recent year for which such figures are available.

21. Advertisements for the NAR® pomegranate juice have appeared in newspapers and magazines nationwide, and in a variety of other advertising media distributed throughout

the Chicagoland area, including Illinois, parts of Indiana, Michigan and in news media

nationwide.

22.     The NAR® trademark has become famous due to its extensive advertising, and due to the

high quality of the pomegranate juice marketed under the NAR® trademark.

23.     In addition to the trademark registration, substantial common law rights exist for Golden

Foods in its distinctive and famous product and label design.

24.     True and correct copies of the trademark registration certificate for Golden Foods

registration of the NAR® trademark, Registration No. 3,260,258, issued July 10, 2007 is

attached hereto as Exhibit "A".

## DEFENDANT AND ITS ACTIVITIES

25.     On or about October 27, 2009, Golden Foods discovered that there were quantities of

pomegranate juice being marketed in the Chicagoland area, being offered for sale at the

following locations, where the purchases may have been made from stores that were

duped by Hyson USA, Inc., due to Hyson's representation that they had the right to sell

the Golden Foods NAR® juice.  Those stores, are but three from among the many where

Hyson USA has sold its counterfeit Nar juice, just in the Chicagoland area.  The

identities of these additional seller entities are:   Garden Fresh Market, of 1786 Hintz Rd.

Wheeling IL; Joe Capputo & Sons Fruit Market, 959 E. Oakton, Des Plaines, IL 60018;

and, Michaels Fresh Market, 856 S. Rte 59, Naperville, IL 60540.   These grocery chains,

and other sellers were duped by Hyson, USA Inc., and are also victims of Hyson's fraud

committed by means of sale of counterfeit juice product under its fraudulently marketed

juice sold under Golden Foods' NAR® trademark, and under Golden Foods corporate

name.

26.  In the ensuing days, agents and employees of Golden Foods visited several locations in order to ascertain the extent of the marketing of this counterfeit "Nar" pomegranate juice.

27.  On information and belief, and based upon the revelations of several employees of various food shops and grocery stores, HYSON USA was identified as the source of this counterfeit "Nar" pomegranate juice.

28.  A true and correct photographic representation of the bottle containing the counterfeit pomegranate juice is attached hereto as Exhibit "B".

29.  An examination of the photographs of Exhibit B reveals that the trademark "NAR" is used, complete with the "TM" appellation, indicating that the mark has been submitted to the United States Patent and Trademark Office for registration on the Register of Trademarks, under the provisions of the Lanham Act.

30.  The label further includes the images common to the original and valid NAR® pomegranate juice marketed by Golden Foods.  Also, the label slavishly copies the Nutritional Information labeling, although the ingredients listed in the counterfeit bottle are not identical in terms of source, location, nor in terms of contents.  In addition, the counterfeit juice product is diluted when compared to the original Golden Foods NAR® pomegranate juice is more dilute in appearance as can be seen from the pictures in Exhibit B.

31.  The stylization and type font of the NAR name on the counterfeit juice is identical to the real, original Golden Foods NAR® product , except that where the original NAR® juice has a precious drop of healthful pomegranate juice represented, the counterfeit product has a stylized heart under the stylized "N", extending into the stylized "a", and there are two stylized lines under each side of the counterfeit products Nar name.  This use by Hyson USA Inc., is calculated to cause confusion, mistake and to deceive the purchasing

public, including the non-functional label art that is confusingly similar to the label art and trade dress of the counterfeit Nar juice label designed to further confuse the public, beyond the use of the trademarks alone.

32.     The counterfeit juice indicates the contents of the bottle contain "10 pomegranates" inside the bottle, whereas the original NAR® Pomegranate Juice contains a superior quality, more intensely flavored better tasting juice.. This is obvious based upon a side by side comparison of the relative opacity of the juices as shown in photos contained in Exhibit "C" attached hereto.

33.     The counterfeit "Nar" juice indicates that it is a "Product of Azerbaijan, Bottled in Russia", whereas the Real, original NAR® juice is a product of Turkey.

34.     The counterfeit "Nar" juice indicates that it contains glucose and the preservative chemical potassium sorbate, which are unnecessary in the real, original NAR® juice of Golden Foods.

35.     The counterfeit "Nar" juice lists the corporate identity of the company responsible for the marketing, packaging and sale of the inferior, watery, counterfeit juice as "International Golden Foods, Inc, of 819 Industrial Drive, Bensenville, IL 60106", which is a blatant lie as to the origin and source of the juice as International Golden Foods has had nothing to do with this inferior, second rate, watery, tasteless product which has been put into commerce by Hyson USA, Inc., in a bottle showing Golden Foods as the source of the juice.

36.     At no time in the past, nor at any time reasonably contemplated in the future, has Golden Foods allowed any business or corporate entity to use its name, its valuable NAR® trademark, or its trade dress or associated artwork found on the bottles of pomegranate juice marketed by Golden Foods on any product, including pomegranate juice.

-8-

37.     Golden Foods strictly controls all aspects of manufacture, packaging and sale of its

products that are sold or distributed under its valuable trademarks, and has made no

agreement with any entity, particularly Hyson USA, Inc., for any use of its marks or

associated artwork, trade dress, UPC label or corporate name.

### EFFECTS OF THIS COUNTERFEIT JUICE
### ON THE CONSUMING PUBLIC AND ON GOLDEN FOODS

38.     The use of Golden Foods' NAR® mark by Hyson USA in the manner described above is

likely to cause confusion, to cause mistake and to deceive customers and potential

customers of the parties at least as to the affiliation, connection, or association of Hyson

USA and International Golden Foods, Inc.

39.     On information and belief, the slavish copying of the trademark, trade name, trade dress

and corporate identity mark, common law trademarks, and cyber-identity of Golden

Foods is likely to, and has in fact caused, consumer confusion as to some affiliation,

connection or association between Hyson USA, and Golden Foods, or as to the origin,

sponsorship, affiliation or approval of the goods marketed and distributed by Hyson, Inc.,

by Golden Foods.

40.     Use in commerce of the Infringing Marks, including the common law trademarks, the

trade dress and identity is likely to cause dilution of the distinctive quality of the NAR®

trademarks.

41.     Use of the Golden Foods' trademarks, including its NAR® trademark in the manner

described above falsely indicates to the purchasing public that the goods and/or website

advertised on the counterfeit Nar juice originate from or were sponsored by, Golden

Foods.

42.     Use of the Golden Foods' trademarks and trade dress, including its NAR® trademark in the manner described above falsely indicates that Golden Foods will assume liability for any defective NAR® product manufactured and put into commerce by the defendant.

43.     Use of the Infringing Marks by Hyson USA Inc., in the manner described above falsely designates the origin of the goods, and falsely and misleadingly describes and represents material facts with respect to the goods, and commercial activities in association with the counterfeit Nar juice product.

44.     Use of the infringing marks by Hyson USA, Inc., in the manner described above, enables Hyson to trade on and receive the benefit of the goodwill in the marks, which Golden Foods has built up at great labor and expense over many years. Use of the Infringing Marks in the manner described above also enables Hyson USA Inc., to gain acceptance for their goods, not solely on their own merits, bu on the reputation and goodwill of Golden Foods and the NAR® marks.

45.     Use of the Infringing Marks by Hyson USA, Inc., in the manner described above unjustly enriches Hyson USA, Inc., at Golden Foods' expense, and makes customers at risk of thinking the poor quality of the counterfeit Nar juice is emblematic of the quality of all Golden Foods products, which could cost Golden Foods thousands and thousands of customers, and millions and millions of dollars.

46.     Use of the Infringing Marks by Hyson USA, Inc., in the manner described above removes from Golden Foods the ability to control the nature and quality of products provided under those marks and places the valuable reputation and goodwill of Golden Foods in the hands of Hyson USA, Inc., over whom Golden Foods has no control.

47.     The activities of Hyson USA, Inc., have caused irreparable harm to Golden Foods and to the public, and unless restrained by the Court, will continue to cause irreparable harm to

Golden Foods and to the purchasing public, including endangering the health and safety

of the purchasing public due to the counterfeit nature of the goods in question.  There is

no adequate remedy at law for such injuries as have been caused to Golden Foods.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

48.   Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

49.   The acts of Hyson USA, Inc., and those acting in concert with them constitute

infringement of federally registered NAR registration in violation of 15 U.S.C. § 1114(1).

50.   The actions of Hyson USA and those acting in concert with them, as described herein are

actions that are willful, and in bad faith, making this an exceptional case within the

meaning of 15 U.S.C. § 1117(a).

51.   Golden Foods has be damaged by the acts of Hyson USA and those acting in concert

with them in an amount that is currently unknown, but that, upon information and belief,

exceeds the amount of $2 Million.

## COUNT II: FEDERAL COMMON LAW TRADEMARK INFRINGEMENT

52.   Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

53.   The acts of Hyson USA and those acting in concert with them, by their actions

complained of herein, constitute trademark infringement of the NAR trademark, and its

associated trade dress, in violation of Section 43(a) of the Lanham Act, 15, U.S.C.

1125(a).

54.   The acts of Hyson USA and those acting in concert with them constitutes trademark

infringement of the International Golden Foods trademark in its own name, and its

associated trade dress, in violation of Section 43(a) of the Lanham Act, 15, U.S.C.

1125(a).

55.   Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

## COUNT III FEDERAL DILUTION

56.   Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

57.   The acts of Hyson USA and those acting in concert with them as complained of herein, constitute dilution in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125©, as amended.

58.   Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

## COUNT IV: FEDERAL UNFAIR COMPETITION

59.   Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

60.   The acts of Hyson USA and those acting in concert with them as complained of herein, constitute violation of Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a).

61.   Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

## COUNT V: FEDERAL CYBERSQUATTING

62.   Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

63.   The acts of Hyson USA and those acting in concert with them as complained of herein, have used the trademark of Golden Foods in that they have placed the domain name "goldenfood.com" on their packaging, thereby using the domain name through trafficking in, and/or using the Golden Foods domain name "goldenfood.com".

64.   The domain name goldenfood.com is identical or confusingly similar to the domain name of Golden Foods own domain name.

65.   The domain name incorporates a common law trademark of Golden Foods, namely "goldenfood.com", which was distinctive at the time that Hyson USA and those acting in concert with them began using the domain name in violation of the rights of Golden Foods.

66.   The acts of Hyson USA and those acting in concert with them evidence their bad faith and intent to profit from the use of the NAR registered mark, the common law rights in the NAR mark, the common law rights in the Golden Foods mark Golden Foods.

67.   The acts of Hyson USA and those acting in concert with them constitute cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

68.   Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

## COUNT VI:  COMMON LAW TRADEMARK INFRINGEMENT

69.   Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

70.   The acts of Hyson USA and those acting in concert with them as complained of herein, constitute violation of the common law of the state of Illinois and other states where Hyson USA and those acting in concert with them, are conducting their activities.

71.   The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

-13-

72.    Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

### COUNT VII: DILUTION UNDER STATE LAW

73.    Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

74.    The acts of Hyson USA and those acting in concert with them as complained of herein, constitute dilution of Golden Foods famous NAR trademark in violation of the common law of the state of Illinois and other states where Hyson USA and those acting in concert with them, are conducting their activities.

75.    The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

76.    Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

### COUNT VIII: COMMON LAW UNFAIR COMPETITION

77.    Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

78.    The acts of Hyson USA and those acting in concert with them as complained of herein, constitute unfair competition in violation of the common law of the state of Illinois and other states where Hyson USA and those acting in concert with them, are conducting their activities.

79. The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

80. Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

## COUNT IX: COMMON LAW PASSING OFF

81. Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

82. The acts of Hyson USA and those acting in concert with them as complained of herein, constitute passing off in violation of the common law of the state of Illinois and other states where Hyson USA and those acting in concert with them, are conducting their activities.

83. The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

84. Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

## COUNT X; DECEPTIVE TRADE PRACTICES UNDER THE
## ILLINOIS DECEPTIVE TRADE PRACTICES ACT