## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL GOLDEN FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-6999 |
| | ) | |
| HYSON USA, INC., | ) | Judge Andersen |
| | ) | Magistrate Judge Cole |
| Defendant. | ) | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
## TO PLAINTIFF'S COMPLAINT

NOW COMES the Defendant, Hyson USA, Inc., by and through its attorneys, Sneckenberg, Thompson & Brody, LLP and for its Answer and Affirmative Defenses to Plaintiff's First Amended Complaint, states as follows:

1.     INTERNATIONAL GOLDEN FOODS, INC., is an Illinois corporation in good standing, having a principal place of business at 819 Industrial Drive, Bensenville, Illinois 60106. It is the owner of intellectual property, and is in the business of selling high quality food products that are imported from various nations and distributed throughout the world.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations of Paragraph 1.

2.     On information and belief, HYSON USA, INC., is an Illinois corporation having a business address of 612 Supreme Drive, Bensenville, IL 60106, and is in the business of selling food products from a variety of locations that are foreign or domestic to the US, and sells those products throughout the United States and more particularly in the Chicago area of Illinois.

ANSWER:     Defendant admits the allegations of Paragraph 2.

3.      On information and belief HYSON USA INC., has been and continues to be marketing certain food items to a variety of commercial establishments located in the Chicago land area, including the following entities, all of which are multi-location grocery chain companies located in the Chicagoland Area: Garden Fresh Market, of 1786 Hintz Rd. Wheeling IL; Joe Capputo & Sons Fruit Market, 959 E. Oakton, Des Plaines, IL 60018; and, Michaels Fresh Market, 856 S. Rte 59, Naperville, IL 60540. These stores are not named as defendants, for the simple reason that they, like the purchasing public were duped by the trademarks, and information on the labels indicating that the juice in question in this suit originated with International Golden Foods.

ANSWER:     Defendant admits that it markets food items to a variety of commercial establishments located in the Chicago area, including Garden Fresh Market, of 1786 Hintz Rd. Wheeling IL; Joe Capputo & Sons Fruit Market, 959 E. Oakton, Des Plaines, IL 60018; and, Michaels Fresh Market, 856 S. Rte 59, Naperville, IL 60540.  Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations concerning why the Plaintiff did not name the stores as defendants.  Defendant denies each and every remaining allegation of Paragraph 3.

## NATURE OF THIS ACTION AND JURISDICTION

4.      This is an action for trademark infringement, dilution, unfair competition, trade dress theft, theft of trademark, common law trademark infringement, corporate identity theft, theft of corporate name, unfair competition, and trade disparagement under the Trademark Act of 1946, 15 U.S.C. § 1051 etseq. (The Lanham Act), and for trademark infringement, dilution, unfair competition, unjust enrichment, cyber-identity theft, marketing of counterfeit food products, trade disparagement, unjust enrichment, cyber identity theft, under the common law of

Illinois, and the statutes of Illinois and in other states where the defendant conducts its illegal activities.

ANSWER: Defendant admits that this is what the Defendant has alleged in Paragraph 4.

5. Plaintiff has omitted Paragraph 5 from its Complaint, therefore no answer is required.

6. This Court has jurisdiction over the subject matter of this action under 15 U.S.C. §1121, 28 U.S.C. § 1331 and 1338 (a) and (b), and has supplemental jurisdiction under 28 U SC, 1367(a) over the Plaintiffs claims under state law.

ANSWER: Based upon the allegations made, the Defendant admits the allegations of Paragraph 6.

7. The matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states due to the conduct of the business by the defendant in interstate and international commerce. Accordingly, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(3).

ANSWER: Defendant denies the allegations of Paragraph 7.

## THE TRADEMARKS OF INTERNATIONAL GOLDEN FOODS

8. Golden Foods is one of the best food distributors in the business. Its name, which is on every product is based upon its product meeting the commonly understood appellation of exceeding the "Golden Standard" for quality of ingredients and for food safety. It is known in the international and the local marketplace for its fine products, including its GOLDEN® Rices and its GOLDEN RICE™, its GOLDEN® candies and chocolates, its GOLDEN ® vegetables,

sauces, beans, fruits and pickles, its CRISPA® pasta, its OLIVE TREE® oils, and most

pertinently, its NAR® pomegranate juice.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief

about the truth of the allegations concerning whether Golden Foods is one of the best food

distributors in the business and the basis for its name.   Defendant denies each and every

remaining allegation of Paragraph 8.

9.      Since 2003, Golden Foods has exclusively and continuously used the highly

distinctive, and unique trademark NAR® in connection with pomegranate juice in the commerce

of the United States, and more particularly within the Chicagoland area within the geographic

boundaries of the United States District Court for the Northern District of Illinois.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief

about the truth of the allegations concerning whether Golden Foods has exclusively and

continuously used the trademark NAR® in connection with pomegranate juice in the commerce

of the United States, and more particularly within the Chicagoland area within the geographic

boundaries of the United States District Court for the Northern District of Illinois since 2003.

Defendant denies each and every remaining allegation of Paragraph 9, including that the

trademark NAR® is highly distinctive or unique.

10.     Based on its US Trademark Registration, Golden Foods has priority in the NAR

trademark for pomegranate juice under Registration No. 3,260,258, issued July 10, 2007,

with a date of first use at least as early as February 12, 2003.

ANSWER:     Defendant denies the allegations of Paragraph 10.

11.     Golden Foods has exclusively licensed and controlled all use of the NAR®

trademark, including controlling the packaging, source, content, quality and distribution of its

distinctive NAR Pomegranate Juice, Golden Foods holds the entire right, title and interest to the NAR trademark.

ANSWER:    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 11.

12.    Golden Foods has exclusively used its corporate identity common law trade identity of International Golden Foods, since the date of July 1, 1986. Since that date, Golden Foods has applied its corporate name to its products, its advertising, its web sites, its business invoices and correspondence and its packaging. Golden Foods holds the entire right title and interest in the corporate name "International Golden Foods", and uses that corporate identity as its trademark which identities Golden Foods, and which use, by identifying Golden Foods helps customers identify the origin, sponsorship and affiliation of product bearing its corporate name.

ANSWER:    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 12.

13.    At no time in the past has International Golden Foods licensed its corporate name for use by any other corporation or business entity in the United States.

ANSWER:    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 13.

14.    Since its date of first use of the NAR® Pomegranate Juice trademark, Golden Foods has not licensed the use of the NAR® trademark to any corporation of business entity in the state of Illinois or in any other state except for the limited license to sell the product given to Golden Foods distributors and sales outlets using only the label with all trademark and trade dress that is approved by and issued by Golden Foods. And, the label on the infringing counterfeit Nar pomegranate juice contains the "OU"® trademarked symbol, which Golden

Foods has not allowed any entity to print onto its labels for pomegranate use in connection with its superior and delicious NAR® pomegranate juice because Golden Foods has no contract with the Orthodox Union, the controlling inspection for Kosher foods that applies the "OU"® trademark only to goods where the vendor has an inspection contract and certification agreement with the Orthodox Union.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations concerning whether Golden Foods has licensed the use of the "NAR® trademark" to any corporation or business entity.  Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations that the label on the subject juice contains the "OU"® trademarked symbol.  Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations concerning whether Golden Foods has allowed another entity to print the "OU"® trademarked symbol on its labels for NAR® pomegranate juice, whether it has any contracts with the Orthodox Union, and to the requirements of the Orthodox Union for application of the "OU"® trademarked symbol.

15.     Since date at Least as early as February 12, 2003, International Golden Foods has used a bar code having the UPC number of 01919505009 which is exclusively applied to its NAR® Pomegranate Juice.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 15.

16.     Since a date of at least as early as January 1, 2000, Golden Foods alone has used the web addresses of "www.goldenfood.com" and "www.goldenfoods.com", and has not ever licensed the use of that web address to any corporation or other business entity within the United States or elsewhere.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 16.

17.     Golden Foods has used the NAR® trademark in conjunction with a variety of label variants, all of which are exclusive to Golden Foods, and which label variants have not be licensed for use by any other corporation or business entity within the United States or other jurisdiction, except for the limited license to advertise and use the exact label configuration in conjunction with the sale and offer for sale of the Golden Foods NAR® pomegranate juice.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 17.

18.     The NAR® trademark and associated labeling and information on the label have been primarily associated with the best quality pomegranate juice, made without additives or other preservatives, just as the name INTERNATIONAL GOLDEN FOODS, is synonymous with the highest quality food from any source.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 18.

19.     Many hundreds of thousands of dollars in sales of the NAR® juice are at stake here, and if a consumer thinks that the 'counterfeit Nar" juice is the real NAR® juice, their opinion of Golden Foods might make many times that amount in jeopardy, for the poor quality of the counterfeit Nar juice could put consumers off from purchasing any Golden Foods product.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 19.

20.     An average of over $50,000 has been spent in marketing NAR® pomegranate juice by Golden Foods per year in the most recent year for which such figures are available.

ANSWER:   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 20.

21.   Advertisements for the NAR® pomegranate juice have appeared in newspapers and magazines nationwide, and in a variety of other advertising media distributed throughout he Chicagoland area, including Illinois, parts of Indiana, Michigan and in news media nationwide.

ANSWER:   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 21.

22.   The NAR® trademark has become famous due to its extensive advertising, and due to the high quality of the pomegranate juice marketed under the NAR® trademark.

ANSWER:   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 12.

23.   In addition to the trademark registration, substantial common law rights exist for Golden Foods in its distinctive and famous product and label design.

ANSWER:   Defendant admits that Golden foods has common law rights, but denies that its product and label design are distinctive and famous.

24.   True and correct copies of the trademark registration certificate for Golden Foods registration of the NAR® trademark, Registration No. 3,260,258, issued July 10, 2007 is attached hereto as Exhibit "A".

ANSWER:   Defendant admits that the Plaintiff has attached a purported trademark registration certificate to its complaint, but lacks information or knowledge sufficient to form a belief about the truth of the allegation that the certificate is true and correct.

## DEFENDANT AND ITS ACTIVITIES

25.     On or about October 27, 2009, Golden Foods discovered that there were quantities of pomegranate juice being marketed in the Chicagoland area, being offered for sale at the following locations, where the purchases may have been made from stores that were duped by Hyson USA, Inc., due to Hyson's representation that they had the right to sell the Golden Foods NAR® juice. Those stores, are but three from among the many where Hyson USA has sold its counterfeit Nar juice, just in the Chicagoland area. The identities of these additional seller entities are: Garden Fresh Market, of 1786 Hintz Rd. Wheeling IL; Joe Capputo & Sons Fruit Market, 959 E. Oakton, Des Plaines, IL 60018; and, Michaels Fresh Market, 856 S. Rte 59, Naperville, IL 60540. These grocery chains, and other sellers were duped by Hyson, USA Inc., and are also victims of Hyson's fraud con mitted by means of sale of counterfeit juice product under its fraudulently marketed juice sold under Golden Foods' NAR® trademark, and under Golden Foods corporate name.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations concerning the date upon which Golden Foods discovered that there were quantities of pomegranate juice being marketed and offered for sale in the Chicagoland area.  Defendant admits that it has sold pomegranate juice to other stores than Garden Fresh Market, Joe Caputo & Sons Fruit Market, and Michael's Fresh Market identified above.  Defendant denies each and every remaining allegation of Paragraph 25.

26.     In the ensuing days, agents and employees of Golden Foods visited several locations in order to ascertain the extent of the marketing of this counterfeit "Nar" pomegranate juice.

ANSWER:    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 26.

27.    On information and belief, and based upon the revelations of several employees of various food shops and grocery stores, HYSON USA was identified as the source of this counterfeit "Nar" pomegranate juice.

ANSWER:    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations concerning whether several employees of various food shops and grocery stores identified Hyson USA as the source of the alleged counterfeit "Nar" pomegranate juice.

28.    A true and correct photographic representation of the bottle containing the counterfeit pomegranate juice is attached hereto as Exhibit "B".

ANSWER:    Defendant admits that the Plaintiff has attached a purported photographic representation of the bottle containing the alleged counterfeit pomegranate juice to its complaint, but lacks information or knowledge sufficient to form a belief about the truth of the allegation that the photographic representation is true and correct.

29.    An examination of the photographs of Exhibit B reveals that the trademark 'NAR" is used, complete with the "TM" appellation, indicating that the mark has been submitted to the United States Patent and Trademark Office for registration on the Register of Trademarks, under the provisions of the Lanham Act.

ANSWER:    Defendant admits that the bottle in Exhibit B reveals that the term "Nar" is used with a "TM" appellation.  Defendant denies each and every remaining allegation of Paragraph 29.

30.     The label further includes the images common to the original and valid NAR®

pomegranate juice marketed by Golden Foods. Also, the label slavishly copies the Nutritional

Information labeling, although the ingredients listed in the counterfeit bottle are not identical in

terms of source, location, nor in terms of contents. In addition, the counterfeit juice product is

diluted when compared to the original Golden Foods NAR® pomegranate juice is more dilute in

appearance as can be seen from the pictures in Exhibit B.

ANSWER:    Defendant admits that the label of the bottle depicted in Exhibit B includes

pictures of pomegranates and a nutritional information label.  Defendants also admit that the

ingredients listed on the bottles depicted in Exhibit D are not identical.  Defendant denies each

and every remaining allegation of paragraph 30.

31.     The stylization and type font of the NAR name on the counterfeit juice is identical

to the real, original Golden Foods NAR® product, except that where the original NAR® juice

has a precious drop of healthful pomegranate juice represented, the counterfeit product has a

stylized heart under the stylized "N", extending into the stylized "a", and there are two stylized

lines under each side of the counterfeit products Nar name. This use by Hyson USA Inc., is

calculated to cause confusion, mistake and to deceive the purchasing public, including the non-

functional label art that is confusingly similar to the label art and trade dress of the counterfeit

Nar juice label designed to further confuse the public, beyond the use of the trademarks alone.

ANSWER:    Defendant admits that the stylization and type font of the Nar name on the

bottles depicted in Exhibits B and C are identical, except that where bottle depicted in Exhibit B

has drop of pomegranate juice represented, the bottle depicted in Exhibit C has a stylized heart

under the stylized "N", extending into the stylized "a", and there are two stylized lines under

each side of the Nar name.  Defendant denies each and every remaining allegation of paragraph
31.

     32.     The counterfeit juice indicates the contents of the bottle contain "10
pomegranates" inside the bottle, whereas the original NAR® Pomegranate Juice contains a
superior quality, more intensely flavored better tasting juice. This is obvious based upon a side
by side comparison of the relative opacity of the juices as shown in photos contained in
Exhibit "C" attached hereto.

     ANSWER:     Defendant admits that the bottle depicted in Exhibit C indicates that the
bottle contains "10 pomegranates inside." Defendant denies each and every remaining allegation
of paragraph 32.

     33.     The counterfeit "Nar" juice indicates that it is a "Product of Azerbaijan, Bottled in
Russia", whereas the Real, original NAR® juice is a product of Turkey.

     ANSWER:     Defendant admits that the bottle depicted in Exhibits C and D indicates
that it is a "Product of Azerbaijan, Bottled in Russia" and the bottle depicted in Exhibits B and D
indicates that it is a "Product of Turkey." Defendant lacks information or knowledge sufficient
to form a belief about the truth of the remaining allegations contained in Paragraph 33.

     34.     The counterfeit "Nar" juice indicates that it contains glucose and the preservative
chemical potassium sorbate, which are unnecessary in the real, original NAR® juice of
Golden Foods.

     ANSWER:     Defendant admits that the bottle depicted in Exhibits C and D indicates
that it contains glucose and the preservative chemical potassium sorbate. Defendant lacks
information or knowledge sufficient to form a belief about the truth of the remaining allegations
contained in Paragraph 34.

35.     The counterfeit 'Nar' juice lists the corporate identity of the company responsible for the marketing, packaging and sale of the inferior, watery, counterfeit juice as "International Golden Foods, Inc, of 819 Industrial Drive, Bensenville, IL 60106", which is a blatant lie as to the origin and source of the juice as International Golden Foods has had nothing to do with this inferior, second rate, watery, tasteless product which has been put into commerce by Hyson USA, Inc., in a bottle showing Golden Foods as the source of the juice.

ANSWER:     Defendant admits that the bottle depicted in Exhibits C and D indicates that the bottle was "imported and distributed by: International Golden Foods, Inc.  819 Industrial Drive, Bensenville, IL 60106." Defendant denies each and every remaining allegation of Paragraph 35.

36.     At no time in the past, nor at any time reasonably contemplated in the future, has Golden Foods allowed any business or corporate entity to use its name, its valuable NAR® trademark, or its trade dress or associated artwork found on the bottles of pomegranate juice marketed by Golden Foods on any product, including pomegranate juice.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 36.

37.     Golden Foods strictly controls all aspects of manufacture, packaging and sale of its products that are sold or distributed under its valuable trademarks, and has made no agreement with any entity, particularly Hyson USA, Inc., for any use of its marks or associated artwork, trade dress, UPC label or corporate name.

ANSWER:     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations concerning Golden Foods control over the manufacture, packaging, and sale of its products or any agreements Golden Foods has with other entities.

Defendant admits that it does not have an agreement with the Plaintiff concerning any use of its

marks or associated artwork, trade dress, UPC label or corporate name.

## EFFECTS OF THIS COUNTERFEIT JUICE
## ON THE CONSUMING PUBLIC AND ON GOLDEN FOODS

38.     The use of Golden Foods' NAR® mark by Hyson USA in the manner described

above is likely to cause confusion, to cause mistake and to deceive customers and potential

customers of the parties at least as to the affiliation, connection, or association of Hyson

USA and International Golden Foods, Inc.

ANSWER:     Defendant denies the allegations of paragraph 38.

39.     On information and belief, the slavish copying of the trademark, trade name, trade

dress and corporate identity mark, common law trademarks, and cyber-identity of Golden

Foods is likely to, and has in fact caused, consumer confusion as to some affiliation, connection

or association between Hyson USA, and Golden Foods, or as to the origin, sponsorship,

affiliation or approval of the goods marketed and distributed by Hyson, Inc., by Golden Foods.

ANSWER:     Defendant denies the allegations of paragraph 39.

40.     Use in commerce of the Infringing Marks, including the common law trademarks,

the trade dress and identity is likely to cause dilution of the distinctive quality of the NAR®

trademarks.

ANSWER:     Defendant denies the allegations of paragraph 40.

41.     Use of the Golden Foods' trademarks, including its NAR® trademark in the

manner described above falsely indicates to the purchasing public that the goods and/or website

advertised on the counterfeit Nar juice originate from or were sponsored by, Golden Foods.

ANSWER:     Defendant denies the allegations of paragraph 41.

14

42.     Use of the Golden Foods' trademarks and trade dress, including its NAR®

trademark in the manner described above falsely indicates that Golden Foods will assume

liability for any defective NAR® product manufactured and put into commerce by the defendant.

ANSWER:     Defendant denies the allegations of paragraph 42.

43.     Use of the Infringing Marks by Hyson USA Inc., in the manner described above

falsely designates the origin of the goods, and falsely and misleadingly describes and represents

material facts with respect to the goods, and commercial activities in association with the

counterfeit Nar juice product.

ANSWER:     Defendant denies the allegations of paragraph 43.

44.     Use of the infringing marks by Hyson USA, Inc., in the manner described above,

enables Hyson to trade on and receive the benefit of the goodwill in the marks, which Golden

Foods has built up at great labor and expense over many years. Use of the Infringing Marks in

the manner described above also enables Hyson USA Inc., to gain acceptance for their goods, not

solely on their own merits, but on the reputation and goodwill of Golden Foods and the NAR®

marks.

ANSWER:     Defendant denies the allegations of paragraph 44.

45.     Use of the Infringing Marks by Hyson USA, Inc., in the manner described above

unjustly enriches Hyson USA, Inc., at Golden Foods' expense, and makes customers at risk of

thinking the poor quality of the counterfeit Nar juice is emblematic of the quality of all Golden

Foods products, which could cost Golden Foods thousands and thousands of customers, and

millions and millions of dollars.

ANSWER:     Defendant denies the allegations of paragraph 45.

46.    Use of the Infringing Marks by Hyson USA, Inc., in the manner described above removes from Golden Foods the ability to control the nature and quality of products provided under those marks and places the valuable reputation and goodwill of Golden Foods in the hands of Hyson USA, Inc., over whom Golden Foods has no control.

ANSWER:    Defendant denies the allegations of paragraph 46.

47.    The activities of Hyson USA, Inc., have caused irreparable harm to Golden Foods and to the public, and unless restrained by the Court, will continue to cause irreparable harm to Golden Foods and to the purchasing public, including endangering the health and safety of the purchasing public due to the counterfeit nature of the goods in question. There is no adequate remedy at law for such injuries as have been caused to Golden Foods.

ANSWER:    Defendant denies the allegations of paragraph 47.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

48.    Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER:    Defendant realleges and incorporates its Answers above as if fully set forth herein.

49.    The acts of Hyson USA, Inc., and those acting in concert with them constitute infringement of federally registered NAR registration in violation of 15 U.S.C. § 1114(1).

ANSWER:    Defendant denies the allegations of paragraph 49.

50.    The actions of Hyson USA and those acting in concert with them, as described herein are actions that are willful, and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

ANSWER:    Defendant denies the allegations of paragraph 50.

51. Golden Foods has be damaged by the acts of Hyson USA and those acting in concert with them in an amount that is currently unknown, but that, upon information and belief, exceeds the amount of $2 Million.

ANSWER: Defendant denies the allegations of paragraph 51.

## COUNT II: FEDERAL COMMON LAW TRADEMARK INFRINGEMENT

52. Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER: Defendant realleges and incorporates its Answers above as if fully set forth herein.

53. The acts of Hyson USA and those acting in concert with them, by their actions complained of herein, constitute trademark infringement of the NAR trademark, and its associated trade dress, in violation of Section 43(a) of the Lanham Act, 15, U.S.C. 1125(a).

ANSWER: Defendant denies the allegations of paragraph 53.

54. The acts of Hyson USA and those acting in concert with them constitutes trademark infringement of the International Golden Foods trademark in its own name, and its associated trade dress, in violation of Section 43(a) of the Lanham Act, 15, U.S.C. 1125(a).

ANSWER: Defendant denies the allegations of paragraph 54.

55. Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon Information and belief, in an amount that exceeds $2 Million.

ANSWER: Defendant denies the allegations of paragraph 55.

## COUNT III: FEDERAL DILUTION

56.     Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER:     Defendant realleges and incorporates its Answers above as if fully set forth herein.

57.     The acts of Hyson USA and those acting in concert with them as complained of herein, constitute dilution in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c), as amended.

ANSWER:     Defendant denies the allegations of paragraph 57.

58.     Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

ANSWER:     Defendant denies the allegations of paragraph 58.

## COUNT IV: FEDERAL UNFAIR COMPETITION

59.     Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER:     Defendant realleges and incorporates its Answers above as if fully set forth herein.

60.     The acts of Hyson USA and those acting in concert with them as complained of herein, constitute violation of Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a).

ANSWER:     Defendant denies the allegations of paragraph 60.

61.     Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

ANSWER:     Defendant denies the allegations of paragraph 61.

## COUNT V: FEDERAL CYBERSOUATTING

62.     Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER:     Defendant realleges and incorporates its Answers above as if fully set forth herein.

63.     The acts of Hyson USA and those acting in concert with them as complained of herein, have used the trademark of Golden Foods in that they have placed the domain name "goldenfood.com" on their packaging, thereby using the domain name through trafficking in, and/or using the Golden Foods domain name goldenfood.com.

ANSWER:     Defendant denies the allegations of paragraph 63.

64.     The domain name goldenfood.com is identical or confusingly similar to the domain name of Golden Foods own domain name.

ANSWER:     Defendant admits the allegations of paragraph 64.

65.     The domain name incorporates a common law trademark of Golden Foods, namely "goldenfood.com", which was distinctive at the time that Hyson USA and those acting in concert with them began using the domain name in violation of the rights of Golden Foods.

ANSWER:     Defendant denies the allegations of paragraph 65.

66. The acts of Hyson USA and those acting in concert with them evidence their bad faith and intent to profit from the use of the NAR registered mark, the common law rights in the NAR mark, the common law rights in the Golden Foods mark Golden Foods.

ANSWER: Defendant denies the allegations of paragraph 66.

67. The acts of Hyson USA and those acting in concert with them constitute cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

ANSWER: Defendant denies the allegations of paragraph 67.

68. Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

ANSWER: Defendant denies the allegations of paragraph 68.

## COUNT VI: COMMON LAW TRADEMARK INFRINGEMENT

69. Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER: Defendant realleges and incorporates its Answers above as if fully set forth herein.

70. The acts of Hyson USA and those acting in concert with them as complained of herein, constitute violation of the common law of the state of Illinois and other states where Hyson USA and those acting in concert with them, are conducting their activities.

ANSWER: Defendant denies the allegations of paragraph 70.

71. The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden

Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

ANSWER:     Defendant denies the allegations of paragraph 71.

72.     Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

ANSWER:     Defendant denies the allegations of paragraph 72.

**COUNT VII: DILUTION UNDER STATE LAW**

73. Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER:     Defendant realleges and incorporates its Answers above as if fully set forth herein.

74.     The acts of Hyson USA and those acting in concert with them as complained of herein, constitute dilution of Golden Foods famous NAR trademark in violation of the common law of the state of Illinois and other states where Hyson USA and those acting in concert with them, are conducting their activities.

ANSWER:     Defendant denies the allegations of paragraph 74.

75.     The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

ANSWER:     Defendant denies the allegations of paragraph 75.

76.     Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

ANSWER:     Defendant denies the allegations of paragraph 76.

## COUNT VIII: COMMON LAW UNFAIR COMPETITION

77.     Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER:     Defendant realleges and incorporates its Answers above as if fully set forth herein.

78.     The acts of Hyson USA and those acting in concert with them as complained of herein, constitute unfair competition in violation of the common law of the state of Illinois and other states where Hyson USA and those acting in concert with them, are conducting their activities.

ANSWER:     Defendant denies the allegations of paragraph 78.

79.     The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

ANSWER:     Defendant denies the allegations of paragraph 79.

80.     Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

ANSWER:     Defendant denies the allegations of paragraph 80.

## COUNT IX: COMMON LAW PASSING OFF

81. Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER: Defendant realleges and incorporates its Answers above as if fully set forth herein.

82. The acts of Hyson USA and those acting in concert with them as complained of herein, constitute passing off in violation of the common law of the state of Illinois and other states where Hyson USA and those acting in concert with them, are conducting their activities.

ANSWER: Defendant denies the allegations of paragraph 80.

83. The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

ANSWER: Defendant denies the allegations of paragraph 83.

84. Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief in an amount that exceeds $2 Million.

ANSWER: Defendant denies the allegations of paragraph 84.

## COUNT X: DECEPTIVE TRADE PRACTICES UNDER THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT

85. Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER: Defendant realleges and incorporates its Answers above as if fully set forth herein.

86.     The acts of Hyson USA and those acting in concert with them as complained of herein, constitute passing off in violation of the common law of the state of Illinois and other states where Hyson USA and those acting in concert with them, are conducting their activities and in violation of the Illinois Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 51011 et seq.

ANSWER:     Defendant denies the allegations of paragraph 86.

87.     The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

ANSWER:     Defendant denies the allegations of paragraph 87.

88.     Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

ANSWER:     Defendant denies the allegations of paragraph 88.

## COUNT XI: UNJUST ENRICHMENT

89. Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER:     Defendant realleges and incorporates its Answers above as if fully set forth herein.

90.     The acts of Hyson USA and those acting in concert with them as complained of herein, constitute unjust enrichment of Hyson USA and those acting in concert with them, at the expense of Golden Foods.

ANSWER:     Defendant denies the allegations of paragraph 90.

91.    The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

ANSWER:    Defendant denies the allegations of paragraph 91.

92.  Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

ANSWER:    Defendant denies the allegations of paragraph 92.

## COUNT XII: COMMON LAW COPYRIGHT INFRINGEMENT

93.  Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER:    Defendant realleges and incorporates its Answers above as if fully set forth herein.

94.    The acts of Hyson USA and those acting in concert with them as complained of herein, constitute violation of the common law copyright of Golden Foods in its bottle design, label design, advertising materials, label copy, label layout, label images, in violation of the Copyright Act of the United States.

ANSWER:    Defendant denies the allegations of paragraph 94.

95.    The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

ANSWER:     Defendant denies the allegations of paragraph 95.

96.     Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

ANSWER:     Defendant denies the allegations of paragraph 96.

## COUNT XIII: VIOLATION OF ILLINOIS COUNTERFEIT TRADEMARK ACT

97.     Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER:     Defendant realleges and incorporates its Answers above as if fully set forth herein.

98.     The acts of Hyson USA and those acting in concert with them as complained of herein, constitute passing off in violation of the common law of the state of Illinois and other states where Hyson USA and those acting in concert with them, are conducting their activities and in violation of the Illinois Counterfeit Trademark Act, 765 ILCS 1040 Act, 815 Ill. Comp. Stat. 5 10/1 et seq.

ANSWER:     Defendant denies the allegations of paragraph 98.

99.     The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

ANSWER:     Defendant denies the allegations of paragraph 99.

100.     Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an

amount that exceeds $2 Million.

ANSWER: Defendant denies the allegations of paragraph 100.

## COUNT XIV: VIOLATION OF THE ILLINOIS
## CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT

101. Golden Foods realleges and incorporates the allegations above as if fully set forth herein.

ANSWER: Defendant realleges and incorporates its Answers above as if fully set forth herein.

102. The acts of Hyson USA and those acting in concert with them as complained of herein, constitute passing off in violation of the common law of the state of Illinois and other states where Hyson USA and those acting in concert with them, are conducting their activities and in violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 IECS 505 et seq.

ANSWER: Defendant denies the allegations of paragraph 102.

103. The actions of Hyson USA and those acting in concert with them, have been conducted maliciously, fraudulently, deliberately, intentionally and with intent to deprive Golden Foods of its lawful rights and hard earned and well deserved reputation, and to intentionally divert sales form Golden Foods, with the intent to inflict serious injury on Golden Foods.

ANSWER: Defendant denies the allegations of paragraph 103.

104. Golden Foods has been damaged by the acts of Hyson USA and those acting in concert with them in an amount currently unknown, but upon information and belief, in an amount that exceeds $2 Million.

ANSWER: Defendant denies the allegations of paragraph 104.

27

## FIRST AFFIRMATIVE DEFENSE
### (INVALIDITY OF NAR MARK - GENERIC)

1.      The Plaintiff has used and registered the mark "Nar" in connection with its pomegranate juice.

2.      The word "nar" means "pomegranate" in Turkish.

3.      In determining validity under the Lanham Act, the Doctrine of Foreign Equivalents requires that all foreign words are translated into English.

4.      Based on the foregoing, the Plaintiff's "Nar" mark is invalid because it is generic in its description of its contents, pomegranate juice.

WHEREFORE, the Defendant, HYSON USA, INC, respectfully requests that this Court enter judgment in its favor, and against the Plaintiffs, and for any other relief this Court deems necessary and just.

## SECOND AFFIRMATIVE DEFENSE
### (INVALIDITY OF NAR MARK – MERELY DESCRIPTIVE)

1.      The Plaintiff has used and registered the mark "Nar" in connection with its pomegranate juice.

2.      The word "nar" means "pomegranate" in Turkish.

3.      In determining validity under the Lanham Act, the Doctrine of Foreign Equivalents requires that all foreign words are translated into English.

4.      The mark "Nar" has not gained a secondary meaning, and is therefore not distinctive under the Lanham Act.

5.      Based on the foregoing, the Plaintiff's "Nar" mark is invalid because it is merely descriptive of the contents of the product it identifies, pomegranate juice.

WHEREFORE, the Defendant, HYSON USA, INC, respectfully requests that this Court enter judgment in its favor, and against the Plaintiffs, and for any other relief this Court deems necessary and just.

## THIRD AFFIRMATIVE DEFENSE
### (VALID GRAY MARKET GOODS)

1.     Upon information and belief, the juice that is the subject of the Plaintiff's Complaint is a genuine product of International Golden Foods.

2.     The subject juice is not materially different from the Nar juice of International Golden Foods.

3.     Because the subject juice is not materially different from the Nar juice of International Golden Foods, there is no potential to mislead or confuse consumers about the nature or quality of the product.

4.     Based on the foregoing, the Defendant's sale of the subject juice was lawful.

WHEREFORE, the Defendant, HYSON USA, INC, respectfully requests that this Court enter judgment in its favor, and against the Plaintiffs, and for any other relief this Court deems necessary and just.

## FOURTH AFFIRMATIVE DEFENSE
### (PLAINTIFF'S TRADE DRESS IS NOT PROTECTED UNDER THE LANHAM ACT OR STATE LAW)

1.     The trade dress associated with Plaintiff's Nar pomegranate juice depicted in Exhibit B of its Complaint consists primarily of illustrations of pomegranates and pomegranate juice.

2.     Accordingly, the trade dress associated with Plaintiff's Nar pomegranate juice depicted in Exhibit B of its Complaint is not inherently distinctive.

3.      Furthermore, the trade dress associated with Plaintiff's Nar pomegranate juice depicted in Exhibit B of its Complaint has not obtained a secondary meaning.

4.      Alternatively, the trade dress of the subject juice bottles sold by the Defendant will not likely be confused with that of the Plaintiff's bottles.

5.      Based on the forgoing, the Defendant is not liable to the Plaintiff under either the Lanham Act or state laws for infringement of the trade dress associated with Plaintiff's Nar juice.

WHEREFORE, the Defendant, HYSON USA, INC, respectfully requests that this Court enter judgment in its favor, and against the Plaintiffs, and for any other relief this Court deems necessary and just.

## FIFTH AFFIRMATIVE DEFENSE
## (NO PROTECTION UNDER FEDERAL DILUTION ACT OR STATE LAW DILUTION CLAIMS – NON-DISTINCTIVE AND NONFAMOUS MARK)

1.      The Plaintiff has used and registered the mark "Nar" in connection with its pomegranate juice.

2.      The word "nar" means "pomegranate" in Turkish.

3.      In determining validity of a trademark, the Doctrine of Foreign Equivalents requires that all foreign words are translated into English.

4.      Thus, the term Nar, when used to describe pomegranate juice, is generic, or at the very least merely descriptive.

5.      Because the Plaintiff's Nar mark is generic or merely descriptive it does not contain a significant degree of distinctiveness.

6.      Additionally, the mark has not become famous as the designator of the Plaintiff's goods.

7.      The Federal Dilution Act and state dilution laws require that a mark be both distinctive and famous, and therefore the Plaintiff's Nar mark is not afforded protection under the Federal Dilution Act or state dilution laws.

WHEREFORE, the Defendant, HYSON USA, INC, respectfully requests that this Court enter judgment in its favor, and against the Plaintiffs, and for any other relief this Court deems necessary and just.

## <u>SIXTH AFFIRMATIVE DEFENSE</u>
## (ANTICYBERSQUATTING CONSUMER PRTECTION ACT DOES NOT APPLY)

1.      The Federal Anticybersquatting Consumer Protection Act, 15 U.S.C. 1125(d), provides:

(d) Cyberpiracy prevention.
(1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person--
        (i)      has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
        (ii)     registers, traffics in, or uses a domain name that--
        (I)      in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
        (II)     in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
        (III)    is a trademark, word, or name protected by reason of section 706 of title 18, United States Code, or section 220506 of title 36, United States Code.

2.      It further provides:

(1)(D) A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

3.      The Defendant is not the domain name registrant or the registrant's authorized licensee for the domain name goldenfood.com, and therefore did not "use" the domain under the Act.

4.      The Defendant did not have a bad faith intent to profit from the mark goldenfood.com, as required by the Act.

5.      Based on the foregoing, the Defendant is not liable to the Plaintiff under the Federal Cybersquatting Act, 15 U.S.C. 1125(d).

WHEREFORE, the Defendant, HYSON USA, INC, respectfully requests that this Court enter judgment in its favor, and against the Plaintiffs, and for any other relief this Court deems necessary and just.

## SEVENTH AFFIRMATIVE DEFENSE
### (DEFENDANT'S GOOD FAITH)

1.      The Defendant acted in good faith and without the intent to infringe on any of the Plaintiff's alleged rights in regard to all of the allegations contained in the Plaintiff's Complaint.

2.      Any alleged infringement of the Plaintiff's rights by the Defendant was done unknowingly, without bad faith intent, and without attempt to conceal the Defendant's actions.

3.      Based upon the Defendant's lack of bad faith, in the event that it is determined that the Defendant is liable to the Plaintiff on any of its claims, the Plaintiff shall not be entitled to attorneys fees, punitive damages, or any other computation of damages above and beyond the Plaintiff's actual sustained damages.

WHEREFORE, the Defendant, HYSON USA, INC, respectfully requests that this Court enter judgment in its favor, and against the Plaintiffs, and for any other relief this Court deems necessary and just.

## JURY DEMAND

The Defendant demands trial by Jury in Chicago, Illinois.


Respectfully Submitted,

HYSON USA, INC.

/s/ WILLIAM J. SNECKENBERG

William J. Sneckenberg
SNECKENBERG, THOMPSON & BRODY, LLP
161 North Clark Street, Suite 3575
Chicago, Illinois 60601
Phone No. (312) 782-9320
Fax No. (312) 782-3787
wjs@stbtrial.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 8, 2010, he caused the foregoing Answer and Affirmative Defenses to be filed electronically through the CM/ECF system which caused Notice to be served upon all parties of record.


s/ William J. Sneckenberg