

**IN THE UNITED STATES DISTRICT COURT** **F I L E D**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| **INTERNATIONAL GOLDEN FOODS, INC.,**<br>    an Illinois corporation,<br><br>        Plaintiff,<br><br>v.<br><br>**HYSON USA, INC.,**<br>    an Illinois corporation,<br><br>        Defendants | JAN 1 5 2010<br>Jan 15 2010<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT<br><br>**CIVIL ACTION NO. 09-6999**<br><br>**Judge Wayne Andersen**<br><br>**Magistrate Judge Cole** |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS, CONTEMPT AND FOR OTHER RELIEF PURSUANT TO HYSON'S VIOLATIONS OF THE AGREED ORDER OF NOVEMBER 25, 2009

NOW COMES International Golden Foods, Inc., by and through its attorneys, and by and through this motion, requests this Court issue an order finding Hyson USA in contempt of this Court, and in immediate contempt of the order issued by this Court on November 25, 2009. On that date, an order was issued finding that Hyson USA, Inc had violated the rights of International Golden Foods, Inc. (Golden Foods) and that in support of that order the following had been stated:

1. International Golden Foods Inc., ("Golden Foods" or "Plaintiff"), is an Illinois corporation having a business address of 819 Industrial Drive, Bensenville, IL 60106.

2. Hyson USA, Inc., ("Hyson" or "Defendant"), is an Illinois corporation having a business address of 612 Supreme Drive, Bensenville, IL 60106.

3. Golden Foods is the registered owner of the trademark registration number 3,260,258,

-1-

which registration issued on July 10, 2007 for the trademark NAR® for fruit juices, including pomegranate juice, in International Class 32 (Prior US Classes 45, 46, and 48), which mark has been used exclusively and continuously by Golden Foods for the marketing and sale of its superior pomegranate juice. (A copy of the registration is attached as Exhibit A to this motion.)[1]

3.      On information and belief[2], Hyson has been marketing a fruit juice product that is packaged in bottles bearing the exactly identical mark of NAR which is the property of Golden Foods, and which packaging further identifies the origin of the pomegranate juice contained therein as being from "International Golden Foods, 819 Industrial Drive, Bensenville, IL 60106". In fact, the labels, packaging and information contained therein are identical to what would be on a Golden Foods label, except that the product originates from Hyson, which is nowhere on the product identified as the source of the goods.

4.      On or about October 27, 2009, agents and employees of Golden Foods found many bottles of the counterfeit pomegranate that originated with Hyson USA Inc., on shelves of many retail outlets (Exhibit D), which outlets and sales locations, upon confirmation, will

---

[1]  Golden Foods has never granted any entity authority to make a label in the colors other than a golden/yellow background, nor has Golden Foods ever granted any license to any entity to import or sell its NAR® Pomegranate Juice in the Chicago area, or in the Midwest generally. And, Golden Foods has never licensed the use of the GOLDEN® mark to any other entity to select, make, import, use or sell products under it in the US for juices. (Declaration of Mansour Amiran attached hereto, Exhibit C.)

[2] This has been confirmed, in accordance with the attached Exhibit D of pictures and receipts, which are pictures taken after December 25, 2009,and into January 11, 12, 13, 14, 2010, of Hyson NAR® Pomegranate Juice on sale in the Chicago Area. Also, Hyson attached a list to their one and only report of the sales in the Chicago area, which purports to be complete in accordance with the requirements of the November 25, 2009 Agreed Order (Exhibit B).

be identified by proper name and address as such are available. At present, none are known to be in active concert with Hyson, though Hyson was required to provide that information pursuant to the order issued by this Court November 25, 2009, and has not done so.

5. Bottles bearing the trademark "Nar", which was not made nor imported by, nor packaged by, nor sold by Golden Foods were purchased at locations in the Chicago area, and further, on information and belief, bottles of the counterfeit Nar juice is available in locations as distant as New York and New Jersey[3].

6. A comparison of the bottles indicates further that the counterfeit "Nar" pomegranate juice has labeling that includes Golden Foods' UPC label code, and that the labeling bears no indication that the pomegranate juice actually originated with any entity than Golden Foods. This is blatant infringement by the means of copying the mark, label and corporate identity of Golden Foods.

7. The counterfeit bottles of Nar juice further state that the juice contained therein originates form Azerbaijan, whereas the original and legitimate NAR® pomegranate juice sold by Golden Foods originates from Turkey (or the US).

8. The type design, type face, label design, label contents, and overall trade dress are so similar that the counterfeit packaging for the counterfeit juice product sold by the

---

[3]The counterfeit NAR® Pomegranate Juice sold to stores in Chicago has meant these stores do not also then purchase the same product, which bears the same trademark and identifiers, from Golden Foods, resulting in many lost sales. And, the quality of the counterfeit juice is poor, resulting in complaints regarding poor quality of all of Golden Foods NAR® Pomegranate Juice, extending possibly to the entire Golden Foods Product line (a portion of which is attached as a catalog of Golden Foods products, attached as an Exhibit F.)

defendant under its "Nar" trade name, as to be called a slavish copy of the legitimate, and superior quality juice marketed and sold by Golden Foods under its NAR® trademark.

9. Golden Foods is known throughout the industry as a distributor, seller, packager and marketer of superior food products. Golden Foods has a well earned reputation for quality that it has developed since starting in the business in July, 1986.

10. Golden Foods reputation for high quality food product began with its famous GOLDEN® rices, including its GOLDEN RICE™, along with its other products including its famous CRISPA® pastas, its OLIVE TREE® oils, and its extensive line of GOLDEN® vegetables, pickles, olives and related foods.

11. The sale of the counterfeit pomegranate juice has placed Golden Foods in great jeopardy, as it has also placed the purchasing public in jeopardy, as the product contained therein has not been supervised as to origin, quality or content, nor has the safety of the packaging process itself been supervised by the trademark holder, Golden Foods.

12. A trademark is the identifier that tells the purchasing public that a given product originates with the trademark holder and is a certification of the quality of the product offered for sale under the trademark. The purchasing public can have no assurance that Golden Foods has supervised the packaging or source of the pomegranate sold by Hyson USA, Inc., under the stolen trademark "Nar", nor can the public be assured that the contents of the counterfeit packaging even contains pomegranate juice at all, or that the contents might be flavored water rather than the real pomegranate juice that Golden Foods sells under its famous NAR® trademark.

13. Hyson USA, Inc., has also included the web address of Golden Foods, being

-4-

"goldenfood.com" as a part of the labeling. Golden Foods has never allowed, licensed or permitted any business entity or individual or corporation to use its web address at any time in the past ten (10) years, since it first established its web address. (See photos of the genuine NAR® Pomegranate Juice and the counterfeit Hyson NAR® Pomegranate Juice, Exhibit G)

14.    The slavish and blatant copying of the trademark and trade dress of the Golden Foods trademark, indicia of origin, indicia of contents, quality statements, business name, corporate name and web address are the most outrageous form of trademark, trade dress and theft of intellectual property.

15.    Golden Foods has invested hundreds of thousands of dollars in marketing efforts related to its NAR® pomegranate juice, and has commensurate annual sales of their NAR® Pomegranate juice. Pomegranate juice is known in the food industry as being rich in antioxidants and other beneficial nutrients. The very best quality pomegranate juice appears dense when observed against the light, whereas the counterfeit juice sold and distributed by Hyson USA is clear and more watery in appearance than the very best pomegranate juice. Hyson even notes that its juice has a "brick value" of about 10, which is about half the brick value of Golden Foods NAR® Pomegranate Juice.[4]

_____

[4] A "brick" is the measurement of the density of certain fruit juices. Juices that appear "clear", actually have suspended in a colloidal sort of fashion, matter that is chock full of the flavor "bits," yet not pulp, which gives the juice apparent 'density' when shown to the light. Pure, fresh squeezed pomegranate juice has, on average, a brick value of about 20, ranging from about 18 to about 22. Golden Foods NAR® Pomegranate Juice has a brick value of 18, meaning it is a juice that is the most expensive to produce, and also more flavorful, contains more real pomegranate material and is more stable in terms of taste, consistency and for maintaining flavor once opened by the consumer. The Hyson counterfeit NAR® Pomegranate Juice has a brick value of about 10.

## SINCE THE INJUNCTION, HYSON USA, INC., HAS DONE NOTHING TO COMPLY

Not only did Hyson do nothing, Hyson has not even attempted to remove the offending goods from the local stores where they were displayed, and upon investigation, none of the product has been recalled. Attached is an affidavit of the President of Golden Foods (Exhibit C) and a salesman for Golden Foods (Exhibit D) showing that Hyson has done exactly and precisely nothing to comply, but much to increase their violations of the valuable trademark rights of Golden Foods.

When responding to the requirements of the Agreed Order, Hyson has, according to its report to the Court (Exhibit B), provided no location for its warehouse in Rosemont, no purchase orders, no invoices, no delivery documents, no contracts, no shipping manifests, no store identifiers with names, addresses, dates of orders, amounts of orders, no advertisements, no identification of the import company in the report, no identification of the bottler, no identification of the source of labels, no copy of the letter req1uired to be sent, no identification of the dates of contact with the stores, no record of calls made to stores, and so on. And on. And empty, vacant, non-compliant, on and on again.

Even the numbers of cartons accepted by Hyson, admittedly sold by Hyson and in the warehouse, do not add up, except they are in excess of the admitted numbers of cartons purchased by Hyson.

There are no weekly updates that have been delivered to the Plaintiff. None. Not a one. Nor has Hyson's counsel called, emailed or otherwise attempted to contact the undersigned

-6-

counsel regarding the reporting requirements of the Agreed Order[5]. See also Exhibit E.)

Both the Plaintiff and the Defendant are in identical channels of trade. Both are selling pomegranate juice under the same trademark term. Yet there is nothing whatsoever that would allow Hyson USA, Inc., to use the NAR® registered mark under the Golden Foods '258 registration. In short, this blatant copying is stunningly akin to the infamous copied Rolex watch cases, or other counterfeiting cases where infamy has attached, if not a few roll-overs by friendly copycat watch destroying, earth flattening machines. All lightness aside, this is counterfeit food, which places the burden of insuring the healthfulness and safety of the product on the shoulders of Golden Foods, while Hyson merrily distributes it without any concern to the harm done to Golden Foods or the burden this product places upon Golden Foods as a guarantor of its quality in the minds of the purchasing public.

In this instance, Hyson USA, Inc., was made aware that they were in violation of the rights of Golden Foods. They knew this because they were told. They knew this because they entered into an agreed order on November 25. They knew this because they were hunted down and served at their businesses. In certain circumstances, they were served twice.

They knew that there were no rights that they could claim to the use of the Golden Foods trademark NAR® or the accompanying trade dress. But, rather than stop their infringing ways, they actually increased their infringement.

Please note the Declarations of Ricardo Robledo and Mansour Amiran (Exhibits D & C, respectively), attached for dates and times, and notice that the sales receipts ( Exhibits H & I),

---

[5]A copy of the undersigned counsel's email log shows no contact from Hyson's counsel in the past 6 weeks (Exhibit E).

show that more than a month *after* the injunction order was entered, Hyson is doing nothing to remove the counterfeit juice and is actually selling more counterfeit NAR® POMEGRANATE Juice. How much more damage does this Court wish Golden Foods to endure? How much more time is Hyson to be allowed to destroy the good name of Golden Foods?

Hyson entered into a form of contract with the Court, and the Plaintiff when they agreed to the November 25, 2009 order. They have abrogated their duties under that contract and have defied the very order they agreed to obey. Their breach renders Hyson contemnors of this Court's November order. And, it renders Hyson in a position where they can have no right, whatsoever, to sell the NAR® Pomegranate Juice that they are peddling with all information indicating the source of the counterfeit juice is from Golden Foods. Their actions, and each bottle of counterfeit juice sold, is a bottle by bottle onslaught against the good name and reputation of Golden Foods.

As Iago said in *Othello,*

"Good name in man and woman, dear my lord,
Is the immediate jewel of their souls.
Who steals my purse steals trash; 'tis something, nothing;
'Twas mine, 'tis his, and has been slave to thousands;
But he that filches from me my good name
Robs me of that which not enriches him,
And makes me poor indeed." *Othello Act 3, scene 3, 155–161*

Hyson's blatant and ongoing infringement of Golden Foods rights is making the reputation of Golden Foods poor indeed, particularly if the measure of that reputation is measured by the poor quality of the counterfeit NAR® Pomegranate Juice. The purchasing public has absolutely no available means to discern the Hyson counterfeit NAR® Pomegranate Juice is a counterfeit. The public would reasonably believe originates from Golden Foods

because it is only Golden Foods information on the label. This is trashing Golden Foods good name. And that good name is not "nothing" for a good reputation to a food purveyor is the very lifeblood of business.

Hyson has stated in screaming actions of flouting of the clear order of this Court, that it has, no intention of stopping its malevolent ways. Hyson, if any recall letters were sent at all, and this cannot be known for there are no such letters in the report to the Court, has also not accepted any returns from merchants. Their representatives have obviously done nothing to get the counterfeit juice off of store shelves.

Counterfeit foods, are dangerous and selling them under another's name is nothing but pure evil. If an injury ensues, it would be purely and legally criminal, as Chicago found out during the months long killing spree at the hand of the Tylenol murderer. And yet, the counterfeit juice remains on store shelves, with new and amended labels

Enough is enough. No more time can be allotted Hyson, nor can Hyson be trusted to do what this Court orders. Huge fines, both for contempt of this Court and for contempt for rights of purchasers to have food certified by the trademark holder as being pure, genuine and healthful are needed immediately. Not tomorrow, not next week. Now. Today. There is no need for any further proceeding. The facts are clear. The bottles with the reddish label from Hyson, containing a watery liquid that is purportedly pomegranate juice, is harming Golden Foods. That harm is serious, ongoing and unrelenting due to Hyson's failure to comply with the agreed order.

**HYSON'S AGREEMENT TO THE NOVEMBER ORDER
IS TANTAMOUNT TO A CONTRACT TO
STOP THE INFRINGMENT OF
<u>GOLDEN FOODS VALUABLE NAR® TRADEMARK</u>**

-9-

Hyson agreed to the order that this Court entered on November 25, 2009.  They also clearly know that there are trademark issues that pertain to the counterfeit NAR® Pomegranate Juice they are selling and distributing, based upon conversations related to Golden Foods Sales Manager for Chicago and President. [See Declaration of Mansour Amiran and Ricardo Robledo, Exhibits C & D.]

By agreeing to the terms of the order, Hyson cannot say it was surprised by or that it objected to its content.  They cannot say that they had no notice of the provisions, for it was the very provisions of the order that they agreed to through their agent and attorney.  The order became a contract, exactly as if the contract had been an agreement as to the requirements Hyson were to complete in order to resolve the issues of trademark infringement.

An order requiring a party to cease use of an infringing mark is akin to a contract to cease use of an infringing trademark. [*See: Interactive Products Corporation, v. A2Z Mobile Office Solutions, Inc.,* 326 F3d 687 (6th Cir, 2002).]

### HYSON'S ACTIONS IMPOSES ALL POTENTIAL PRODUCT LIABILITY WITH GOLDEN FOODS WHILE THE HYSON, THE UNIDENTIFIED DISTRIBUTOR OF THE COUNTERFEIT DRINK PRODUCT KEEPS ALL PROFIT FROM THEIR HEINOUS ACTS

The injunctive portions of the order were to ensure that the damage to Golden Foods by the blatant and ongoing infringement, the intentional taking of the rights of Golden Foods to its valuable trademark and damage to the reputation of Golden Foods would be minimized.  But, rather than limit the damages to Golden Foods, Hyson has acted with impunity to further damage Golden Foods by selling a product that has no factual, actual origin with Golden Foods.  And the very product, is put into commerce with an unsuspecting public having no way to know that the

product did not originate with Golden Foods. Hyson didn't identify itself as the origin of the sub-standard NAR® Pomegranate Juice. It has left all of the counterfeit product on store shelves with the public unaware as to the real source of the counterfeit, substandard food, namely Hyson's NAR® Pomegranate Juice, making Golden Foods as the only known source of it for the public.

A trademark is designed to give a limited monopoly to the mark holder, so that the trademark owner holds all rights to sell and distribute products under that registered mark. With those rights come obligations. And, the reputation of the mark holder is inextricably tied to the quality and safety of the product bearing a given trademark when the product is sold to the public. Food products in particular carry the added responsibility that every food product sold will also meet quality standards, be safe, and are certified by the mark holder to originate from sources the mark holder knows will provide a safe food product that can be consumed by the public without fear of harm of any degree. Food products, like drug products present special obligations to protect the public from harm. And a company that is known for their high quality food products can be severely damaged by the palming off of counterfeit juice as Hyson has done with the Hyson counterfeit NAR® Pomegranate Juice.

Everyone knew that Johnson & Johnson would never have put cyanide into Tylenol capsules, yet that situation where counterfeit by taint (and clearly inferior quality, as in deadly), pain medicine caused the stock of Johnson & Johnson to plummet while people avoided all capsules from that company for years as a result of the Tylenol murders in Chicago. Johnson & Johnson, the trademark owner of Tylenol, was viewed in the mind of the public to be responsible for the tainted medicine because Johnson & Johnson's trademark was on the packaging, not the

identity of the real source of the deadly over-the-counter pain reliever. Such is the power of a trademark.

Golden Foods trademark rights means that liability for the product defects as well as credit for its success or excellence are identified in that trademark. Golden Foods is the only identified entity on the packaging of the counterfeit NAR® Pomegranate Juice. That is the essence of a trademark holder's right and obligations. The statutory monopoly regarding a given trademark, granted to the trademark holder means that any counterfeit, reproduction, or colorable imitation of a registered mark will first lead to the door of the trademark holder when something is wrong with a product. Such are the rights conferred by the Lanham Act at 15 U.S.C. 1114. And such obligations that also appertain to those rights include, for food merchants, a high duty to protect the public from, for example, counterfeit foods.

Trademark infringement is a tortuous act. The Restatemenet 2d of Torts, Sec. 729, requires that several factors are evaluated when evaluating a possibly infringing mark compared with the mark held by the trademark registrant, or common law owner of a trademark.. These factors include:

*(a) the degree of similarity between the allegedly infringing mark and the registrant or mark owners' mark.*

In this case, the marks at issue are identical, and the information on the label is identical and identifies only Golden Foods, not the real entity that placed the counterfeit NAR® Pomegranate Juice into commerce. Nowhere is Hyson even hinted at as the source of the counterfeit juice, and the only connections between Hyson and the counterfeit NAR® Pomegranate Juice are those revealed by Hyson's representatives.

-12-

*(b) the intent of the actor adopting the designation.*

This is easy to evaluate. Hyson has <u>no intention of identifying itself.</u> They have only identified themselves through their sales agents' statements. This means that the only intent that can be inferred from the actions of Hyson in initially selling the counterfeit NAR® Pomegranate Juice, and in continuing to sell the NAR® Pomegranate Juice more than a month after the order was entered by this Court is that Hyson intended to infringe Golden Foods trademark.

(c.) *the relation and manner of use between the good marketed and the goods of the trademark owner.*

In the case at bar, the goods are identical in appearance and purport to be identical in quality of Golden Foods NAR® Pomegranate Juice. But, the counterfeit juice is anything but identical in fact, once the bottle is open. Then, the inferior quality of the juice speaks loudly that the company identified on the label, which is not the infringer, but is Golden Foods.

(d) *the degree of care used by the purchaser.*

There are two types of people that will purchase pomegranate juice, and more particularly, the counterfeit NAR® Pomegranate Juice. They are either customers familiar with Golden Foods reputation for, and history of, marketing only the highest quality of food products who will select pomegranate juice by making sure the label says Golden Foods NAR® Pomegranate Juice. Or, customers who simply want pomegranate juice and unsuspectingly are misled by Hyson into purchase of the counterfeit NAR® Pomegranate Juice. Either group will find that the counterfeit NAR® Pomegranate Juice is grossly inferior to the pomegranate juice that Golden Foods offers under its own NAR® Pomegranate Juice trademark.

Those unfamiliar with, or those familiar with Golden Foods NAR® Pomegranate Juice

-13-

will suffer initial confusion, and will find they have been lied to by the false label on the counterfeit NAR® Pomegranate Juice. Either way, the pomegranate juice purchaser will have been a victim of initial interest confusion, as described in *Promatek Industries Ltd., v. Equitrac Corporation* 300 F3d 808 (7th Cir. 2002). And, adding injury to insult, the counterfeit NAR® Pomegranate Juice also lists only the top level domain name of Golden Foods, being "www.goldenfood.com" as the only web address where information can be found about the counterfeit NAR® Pomegranate Juice. An additional problem arises. Golden Foods has no information about the counterfeit NAR® Pomegranate Juice, as Hyson has also NOT COMPLIED with any of the provisions of the order of this Court entered Nov. 25, 2009 (*infra)*.

Hyson has therefore also added to the damages to Golden Foods through domain name infringement.

Actions speak louder than words. Hyson has intentionally allowed the fake, counterfeit, inferior juice to remain on store shelves. They are in clear contempt of the Court's November 25, 2009 Agreed Order.

### THERE IS NO DOUBT AS TO SIMILARITY OF THE MARKS, BUT IF THERE WERE, THE SIMILARITY MUST BE RESOLVED AGAINST HYSON

Adding insult to injury, Hyson, has NOT contacted the undersigned counsel for Golden Foods, requesting additional time to comply with the required complete removal of the offending product. Enough is enough.

Hyson, has not performed the required accounting as set forth in the November 25 Agreed Order, nor has it don anything in the marketplace to comply with this Court's order. And, Hyson has apparently expanded the amount of offending product in local stores. A picture

-14-

is worth a thousand words. Look at the pictures of the many places where counterfeit NAR® Pomegranate Juice is on sale in the Chicago area. These are from stores that were carrying the Golden Foods NAR® Pomegranate Juice. But, when offered the counterfeit juice, assured by Hyson's sales staff that it was the same as Golden Foods juice, and that Hyson had full rights to sell it, those stores bought what they thought was the superior, genuine Golden Foods NAR® Pomegranate Juice. The reason is that Hyson's watery, counterfeit juice is sold to stores at more than a dollar less than Golden Foods can offer it to stores. The Golden Foods juice does cost more, and it costs more for a reason.

The genuine Golden Foods NAR® Pomegranate Juice is more expensive because it is genuine, of the highest possible quality, and is guaranteed to be the best available juice for Golden Foods customers. That is the standard of Golden Foods. Quality costs money, not a lot more, but enough to make a difference to store owners in this economy. Why would a store owner pay more if they can get Golden Foods quality at Hyson's prices? Why indeed. The answer is that they don't.

Customers though, when they drink the counterfeit NAR® Pomegranate Juice know immediately that something is wrong. That something will often translate into a false impression that Golden Foods sells inferior products, which is an assault on the hard earned, well deserved good name of Golden Foods. See: Declarations of Mansour Amiran, and Ricardo Robledo, sales manager for Golden Foods in Chicago, Exhibits C & D.

If a picture is worth a thousand words, these photos only increase the actual flagrant disregard of Hyson regarding compliance with the Agreed Order and its compliance with the laws of the US regarding trademark infringement as to the still extant and valuable rights of

Golden Foods in its NAR® Pomegranate Juice.

### HYSON HAS INCREASED ITS VIOLATION OF THE TRADEMARK NAR®

Hyson has, in fact, increased the damage to Golden Foods by its inaction and its foul deeds, which it has done nothing to correct. This has caused Golden Foods additional damage to its reputation and to its business. It has suffered damages to an amount in excess of $10,000 per day of contempt of the order issued earlier by this court. Golden Foods believes that such calculation of damages should begin not earlier than December 5, 2009, as it would have been reasonable to have all the product removed from all stores where Hyson had sold the offending NAR® Pomegranate Juice, which means that Hyson be fined an amount not less than $1,000,000 for its blatant and willful contempt, in addition to any damages found by this Court for Hyson's willful and blatant infringement of Golden Foods valuable trademark rights, and its business reputation.

Rather than comply with the order to stop all sales, recall the product and cease and desist from accepting any product to its facilities for future sale or sale of any product labeled NAR® Pomegranate Juice. But, Hyson, after agreeing to the order and the entry of that agreed order, has actually printed more labels, bottled more juice, and made more sales. It has even <u>expanded</u> its deliveries. Grocers, when contacted by Golden Foods sales people, affirm that no product has been recalled. None. Not a bit, not a bottle. And remember, Golden Foods filed its suit regarding **counterfeit** pomegranate juice, sold under its own NAR® trademark and with all identifying information leading solely and only back to Golden Foods. Nothing on the Hyson labels indicates that Hyson is the source of the counterfeit pomegranate juice.

And this counterfeit NAR juice is hurting Golden Foods and costing Golden Foods more

-16-

and more every day.  For, because the Hyson product is inferior, and Hyson is selling it at more than $1.00 per bottle less than Golden Foods can sell its product for, due to the higher quality source and expense in packaging such a quality product, Golden Foods customers are taking the lower price option and going with the counterfeit juice product.

## IT IS OBVIOUS ONLY TO AN INFRINGER, OR GOLDEN FOODS ITSELF, THE REASON THE HYSON INFRINGING COUNTERFEIT NAR JUICE IS A COUNTERFEIT

That obvious reason is in the color of the labels.  Everything else about the counterfeit juice appears genuine to the eye.  Golden Foods has always used, where possible, a gold or yellow color background in its label design to show the origin of the goods is from the *Golden* company.  (See the Golden Foods Catalog, Exhibit F.)  That means, where a product will look best when packaged with a gold or yellow color band or as a dominant label color, that is exactly what Golden Foods does.  An infringer would not. Golden Foods has never ordered labels that would have as the primary color scheme as red, burgundy, purple, reddish/black or other primarily red color without the gold or yellow.  It just would not happen.

Customers of Golden Foods know that when they reach for a GOLDEN® product, they are getting only the best quality.  Customers reaching for the counterfeit NAR® Pomegranate Juice believe they are getting a Golden Foods product, because that is what the label says.

After all, it is counterfeit, and Golden Foods has no way to guarantee its quality, even if Golden Foods is the company on the label and the company that is indicated as the source of the goods in the bottles.

Food scares and contamination events have been big news in the past five years.  One

-17-

need not remember much to recall the pet food frights caused by melamine contamination, gross

*e. coli* contamination from inadequate safety standards in beef processing facilities.   Peanut

butter, fresh spinach in ready-to-serve packs and the list goes on and on.   Tomatoes were

erroneously labeled as a source of *salmonella* and entire menus in the fast food industry were

changed for months.   Consumers have, as a result, lost confidence in their food products. [See:

*Consumer confidence in food safety plunges in wake of peanut butter contamination, University*

*of Minnesota study finds,* Regents of the University of Minnesota, College of Food, Agricultural

an natural Resources Sciences release, and accompanying Power Point® materials, found at:

http://www1umn.edu/news/news-releases/2009/UR_RELEASE_M... attached hereto as an

Exhibit J along with other articles.]

Companies such as Golden Foods spend much more of their operating money ensuring

the food they deliver to the US consumer are safe, healthful and sound.   They spend much extra

money to be sure the quality of foods that they import are only from the very best sources.   This

has been done in light of the 63 percent of respondents to a recent study indicating they had

changed their shopping behavior because they wanted better value for their money.   Almost half

have purposely chaged shopping behavior to access fresher or higher quality foods. [See: *IBM*

*Study, "Less Than 20% of Consumers Trust Food They Buy is Safe and Healthy, IBM Study*

*Finds",* www-03.ibm.com/press/us/en/press release/27817.wss; June 24, 2009: Exhibit J.]

And, who can forget the issue at the heart of that pet food scare?   It wasn't the pet food

manufacturers, but a supplier who substituted a counterfeit protein source, melamine, for the real

protein that should have been in the food meal preparation.

Again, Hyson is selling, continuing to sell, and making ongoing and repeated sales of

counterfeit juice products, every day since the order which they agreed to was entered. And they are not complying with the terms of the order, nor are they stopping or mitigating the damages that mount every minute the counterfeit juice remains on the shelves.

## THE NAR® TRADEMARK IS FANCIFUL AND ENTITLED TO IMMEDIATE PROTECTION

The trademark NAR® for Pomegranate Juice was selected by Mansour Amiran, and has no associated meaning, nor was the trademark intended to have any meaning when it was selected by Golden Foods. It does not appear to have any readily ascertainable meaning in any of the areas of the world where pomegranates grow. Thus, the mark was selected because it didn't have any readily available association with pomegranates, fruits, juices, liquids or otherwise, in any language familiar to Golden Foods, the holder of the mark. [See: Declaration of Mansour Amiran, Exhibit C.]

A fanciful or arbitrary mark such as NAR® is entitled to great protection as it is a mark that is unique to the mark holder. Such marks can be images, or can be made up words. Such made up words include well known marks such as KODAK®, XEROX® and so on. They also include the trademark NAR®.

The injunctive relief requested in this case, as to the fanciful or arbitrary mark NAR® demands that this Court maintain the injunction. The harm from Hyson's actions cannot be allowed to continue, even if an injunction is to preserve the *status quo* for the simple reason that the present *status quo* is precisely a situation where damages are increased by every day that the counterfeit NAR® Pomegranate Juice is on sale. [See: *Abbott Laboratories v Mead Johnson & Co.*, 971 F 2d 6, (7th Cir, 1992); *Kellogg Company v Exxon Corporation,* 209 F3d 562 (6th Cir.

2000); *Green River Bottling Company v. Green River Corporation,* 997 F2d. 359 (7th Cir 1993).]

The protection afforded to Golden Foods NAR® trademark must be afforded by means of enforcement of the preliminary injunction. All of the factors for evaluating the preliminary injunction demand equitable relief in favor of Golden Foods. [See: *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, (8th Cir 1981).]

Also, the NAR® mark must be protected because the existence of the registration is *prima facie* evidence of the validity of the registration. [See: Lanham Act, 15 U.S.C. 1057(b)] (Exhibit A) Therefore, in addition to the contract made by Hyson with the Court in agreeing to the Order, the mark alone requires this Court protect it because of the statutory requirements regarding trademark rights enforcement.

### THERE CAN BE NO DOUBT THAT GOLDEN FOODS IS THE WRONGED PARTY AND THAT GOLDEN FOODS WILL PREVAIL

Golden Foods is the sole owner and solely holds the rights to the NAR® Pomegranate Juice trademark. Hyson agreed to an order requiring they cease and desist all sales or offerings for sale of any pomegranate juice under its NAR® trademark. Hyson has not followed the provisions of the order, has not performed the acts required of it under that order and much of the infringing counterfeit NAR® Pomegranate Juice remains on sale.

Q.E.D. Hyson has acted in such a manner as to increase, rather than mitigate its harm to Golden Foods. Therefore, the actions of Hyson must be considered to be willful infringement, entitling Golden Foods treble damages, attorneys fees and related costs for the actions of Hyson.

### BALANCING OF THE HARMS MEANS AN INJUNCTION MUST BENEFIT GOLDEN FOODS TO STOP ALL SALES OF THIS COUNTERFEIT JUICE IMMEDIATELY

In looking at the products together, the real and genuine Golden Foods NAR®

Pomegranate Juice, and the counterfeit Hyson NAR Pomegranate Juice, it is clear that all equities

balance to the side of Golden Foods, the wronged party. Hyson has and continues to

intentionally infringe the trademark of Golden Foods. They have added to their initial grievous

harm to Golden Foods by amending the labels to include the information regarding quality of

Pomegranate Juice, which is expressed in "bricks", *supra*. Balancing of the harms requires a two

step process.

First, the Court must consider the likelihood of Golden Foods success on the merits.

There is no question there for Golden Foods is the registered owner of the mark, and has

submitted declarations to this Court indicating that Hyson has never received any right to use the

Golden Foods NAR® Pomegranate Juice trademark. Second, the Court must look to the actions

of Hyson in palming off juice that purports to be originating from Golden Foods, but is from a

country where Golden Foods does not now import, and has not ever, imported pomegranate juice

from that country. [See, Amiran Declaration, especially Para. 3 and 4, Exhibit C.]   These factors

weigh exclusively in the favor of Golden Foods. [See: *Helene Curtis Indus., Inc., v. Church &

Dwight Co, Ins.*, 560 F 2d 1325 (7th Cir. 1977), and its progeny, including, e.g., *Ty Inc., v. The

Jones Group, Inc.*, 237 F 3d 891 (7th Cir 2001).]

## NO EVIDENTIARY HEARING IS EVEN NECESSARY
## TO FIND GOLDEN FOODS' NAR® TRADEMARK HAS BEEN VIOLATED

Because of the statutory presumptions pertaining to the valid NAR® Pomegranate Juice

trademark, this Court does not even require that there be an evidentiary hearing to enforce the

rights of Golden Foods in its trademark. The same is true regarding the issue of contempt of the

-21-

November 25, 2009 order because the violations of the rights of Golden Foods and the violation of the order are plain, obvious and simple to see.

The failure of Hyson to file and serve upon Golden Foods counsel all of the documents required to be prepared and served, and the photographs showing the ready availability of the offending counterfeit NAR® Pomegranate Juice product provide all necessary bases for the Court to enforce the Order and enforce the requirements of the Lanham Act pertaining to trademark registrations.

The declaration of Mansour Amiran (Exhibit C), and the pictures and sales receipts for counterfeit NAR® Pomegranate Juice (Exhibits H & I), show that Hyson has acted knowingly and with purpose so as to violate the rights of Golden Foods in its trademark. Hyson had to know that, just by selling the bottles alone wherein no identification showing Hyson is the proper source, and showing that the counterfeit NAR® Pomegranate Juice must have trademark and other rights associated with it. They even rely upon the false statements of their alleged source of the juice, provided as their sole documents regarding the counterfeit NAR® Pomegranate Juice, Exhibit L). Once notified that the sale by Hyson was a breach of Golden Foods rights, Hyson did not act with clean hands and immediately cease sale of the product. To date, they have done nothing to halt their harm to Golden Foods.

Hyson chose to continue violating the rights of Golden Foods. It chose to ignore the provisions of the very order it agreed to follow. It has shown by its own actions that it knew, it actually knew, not just that it "should have known", that Golden Foods rights in the NAR® Pomegranate Juice trademark were violated. Hyson willfully and purposefully has violated the Golden Foods trademark and has even increased its violations of Golden Foods rights by selling

the counterfeit NAR® Pomegranate Juice with new, recently modified labels. (Declaration of

Mansour Amiran and photos attached hereto.) [See: *Chanel Inc. v Italian Activewear of Florida*,

931 F2d 1472 (9th Circuit 1991); *Amoco Oil v Rainbow Snow*

### SANCTIONS AND REMEDIES FOR INFRINGEMENT AND CONTEMPT BY HYSON MUST BE IMMEDIATELY GRANTED TO PREVENT FURTHER HARM TO GOLDEN FOODS

Hyson apparently does not believe that selling counterfeit NAR® Pomegranate Juice is a

serious matter. Hyson apparently does not believe that violating the Agreed Order of this Court

is a serious matter. The foregoing, along with the Exhibits, shows a deliberate, studied,

intentional course of conduct to violate the rights of Golden Foods and to violate the lawful order

of this Court.

While an injunction is an appropriate remedy to stop infringement, additional damages

are also required to make Golden Foods whole after this months long seige of the trademark

rights of Golden Foods to its NAR® Pomegranate Juice trademark. Golden Foods has lost sales,

and has endured customers thinking that Golden Foods is the source of the counterfeit NAR®

Pomegranate Juice. Golden Foods has endured and suffered losses due to the damage to its

overall reputation for quality caused by Hyson's evil deeds, and damage to the reputation of its

NAR® Pomegranate Juice trademark.

A severe penalty is demanded. A severe penalty against Hyson, along with actual

compliance with the Court's Order is the only remedy that will make Golden Foods injuries less

damaging to it. At present, it is not known whether or not the NAR® Pomegranate Juice

trademark can be repaired. If it cannot, Golden Foods has lost hundreds of thousands in market

development costs. Those costs for loss of market share, loss of trademark value and loss of goodwill must be compensated. [See: *JCW Investments, Inc., v Novelty, Inc.* 482 F3d 910 (7th Cir. 2007); *Zelinski v Columbia, Inc.,* 335 F 3d 633 (7th Cir 2003)]

## CONCLUSION

Wherefore, it is respectfully requested that this Court find Hyson in contempt *instanter,* as it has blatantly, openly and notoriously acted contrary to the clear provisions of this Court's November 25, 2009 Agreed Order. It is requested that Hyson be fined an amount not less than $10,000 per day, and not less than $590,000 for profits estimated and based upon the provisions of 15 U.S.C. 1117(a) and (b), and , to impose and impose an additional fine of $1 Million for infringement of the Golden Foods NAR® trademark, and again (due to Hyson's contemptuous behavior) immediately and permanently enjoin Hyson USA Inc., from all activity relative to the NAR pomegranate juice, and that the Court require the following additional remedies:

A.   Hyson under the supervision of the Court, and such supervision being approved by Golden Foods, shall immediately and effectively recall at its expense any and all pomegranate juice, or any other fruit juice, that it has sold, distributed, or that is anywhere in the chain of commerce, whether in the US or otherwise, or even on the way to the US and that it be required to destroy such juice, with proof of such destruction being supervised by the Court.

B.   Hyson provide to this Court a list of any and all sources of the NAR® Pomegranate Juice that it is selling or has sold under the mark "Nar", whether in the US or anywhere in commerce, and all sources for bottles, packaging materials, labels and the like.

C.   Hyson be required to destroy at its own expense, and under the supervision of this Court, any and all packaging material, labels, bottles, packages, or the like.

D.   Hyson be required to provide to the Court any and all invoices, sales orders, emails, correspondence, contracts, filings with any regulatory agencies, and the like, with copies given to Golden Foods, for any and all events relating to or touching upon the acquisition of, purchase, sale, distribution, import, export, or any offers for sale of the same, for any and all Nar juices that it has sold, is under contract to sell, or that it contemplates distributing into commerce.

E.   That Hyson USA be required to pay the additional amount of $1 Million per event, as surety against any complaint that may arise from the sale of or distribution of and resulting consumption of any juice that it has sold or distributed under the Nar trademark or where the packaging identifies International Golden Foods as the source of the product, in the event that a consumer suffer any harm whatsoever from consumption of the juice that it has sold under the Nar trademark and/or trade name.

F.   That Hyson USA Inc., be required to recall from all consumers, and at its sole expense, any and all bottles, containers or packages of juice that it has sold and which have reached the public from sale through any grocery store or other shop, and that it reimburse each and every consuimre the full retail price paid for each and every such bottle of Nar Juice sold.

G.   That Hyson USA be required to take out newspaper and broadcast media advertisements that indicate the recall, and that it further indicate in such news

-25-

media that it is responsible for the sale of counterfeit food products, and that Golden Foods is the victim of trademark theft, theft of corporate identity, theft of UPC code numbers, theft of web address, and further that Hyson is solely responsible for any and all damages resulting therefrom, including any and all damages resulting from its infringement of Golden Foods trademark and its sale and offer for sale of counterfeit juice product using Golden Foods' trademark NAR® in connection with juice, particularly pomegranate juice.

H.      That Hyson be required to fully reimburse any and all purchasers of the counterfeit Nar juice for all of their costs, including their purchase costs, advertising, promotional expenses, and further that each and every purchaser of the counterfeit Nar juice be given, at Hyson's sole expense, an equal amount of Golden Foods NAR® Pomegranate Juice.

And, Golden Foods prays this Court order such other and further relief as would be just in the circumstances.

Respectfully submitted,

INTERNATIONAL GOLDEN FOODS, INC.

By: _____ /s/ Elizabeth Hunt Schoettly/s/
        Its Attorney

Elizabeth Hunt Schoettly, Esq.
Law Offices of Elizabeth H. Schoettly
1355 West Estes Ave., Suite L3
Chicago, IL 60626
Phone: 773-761-4590
Email: jehschoett@juno.com
IL ARDC No. 3126573

Exh A



7209739

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS, SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

November 03, 2009

THE ATTACHED U.S. TRADEMARK REGISTRATION *3,260,258* IS
CERTIFIED TO BE A TRUE COPY OF THE REGISTRATION ISSUED BY
THE UNITED STATES PATENT AND TRADEMARK OFFICE WHICH
REGISTRATION IS IN FULL FORCE AND EFFECT.

REGISTERED FOR A TERM OF *10* YEARS FROM  *July 10, 2007*
SAID RECORDS SHOW TITLE TO BE IN:  *Registrant*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

E. BORNETT

Certifying Officer



Int. Cl.: 32

Prior U.S. Cls.: 45, 46 and 48

**United States Patent and Trademark Office**

Reg. No. 3,260,258
Registered July 10, 2007

## TRADEMARK
## PRINCIPAL REGISTER

# Nar

INTERNATIONAL GOLDEN FOODS, INC. (ILLI-
NOIS CORPORATION)
819 INDUSTRIAL DRIVE
BENSENVILLE, IL 60106

FOR: FRUIT JUICES, IN CLASS 32 (U.S. CLS. 45, 46
AND 48).

FIRST USE 2-12-2003; IN COMMERCE 2-12-2003.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SER. NO. 78-771,565, FILED 12-12-2005.

CHRISTOPHER BUONGIORNO, EXAMINING AT-
TORNEY

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Dec 16 04:04:00 EST 2009*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

# Nar

| | |
|---|---|
| **Word Mark** | NAR |
| **Goods and Services** | IC 032. US 045 046 048. G & S: Fruit juices. FIRST USE: 20030212. FIRST USE IN COMMERCE: 20030212 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 78771565 |
| **Filing Date** | December 12, 2005 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | April 24, 2007 |
| **Registration Number** | 3260258 |
| **Registration Date** | July 10, 2007 |
| **Owner** | (REGISTRANT) International Golden Foods, Inc. CORPORATION ILLINOIS 819 Industrial Drive Bensenville ILLINOIS 60106 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

*rec'd fr.*
*Wm. Sneckenberg*
*01-14-2010*
*@ 8:50 AM*
*J.Ad. Rm. — Dirksen*
*Bldg.*

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

INTERNATIONAL GOLDEN FOODS, INC.,
an Illinois corporation,

    Plaintiff,

v.

HYSON USA, INC.,
    an Illinois corporation, and
    Businesses/Entities "A" through "F"

    Defendant.

CIVIL ACTION NO. 09CV6999

Judge Wayne R. Andersen
Magistrate Judge Jeffrey Cole

### PRELIMINARY REPORT AND RESPONSE
### TO PRELIMINARY INJUNCTION ORDER

NOW COMES the Defendant, Hyson USA, Inc., by and through its attorneys,

Sneckenberg, Thompson & Brody, LLP, and for its Preliminary Report in Response to the

Preliminary Injunction Order, states as follows:

### Response to Paragraph 2 of Order

2.    Consistent with paragraph (1)(A) above, Hyson USA shall immediately remove from sale

of display, and recall any and all beverage products, catalogs, advertisements, and any

other items or goods bearing NAR, Golden Foods, the infringing marks, the infringing

label design, the domain names "goldenfood.com", the Golden Foods UPC label

configuration, or any product, item, document, thing, or advertisement, that contains any

word, symbol or image that is confusingly similar thereto.  Hyson USA and any and any

and all persons or entities acting in concert with them, shall also submit to the Court and

serve upon Golden Foods counsel within 7 (seven) business days after the entry and

service of any injunction, a preliminary written report detailing:

a) the number of all products produced, manufactured, made, imported, or distributed by

or for Hyson USA and any and all persons or entities acting in concert with them, or under their control, bearing the NAR mark, the Golden Foods Nar label design, any label confusingly similar to the Golden Foods NAR label, the Golden Foods UPC code, the "goldenfood.com" domain name, or any material including any word or words confusingly similar to the marks above;

**RESPONSE:** On October 23, 2009, Hyson U.S.A. received 2,496 cases of beverage supplied under the name "NAR pomegranate juice" or "Melograna" on consignment from East-West Trading based in St. Petersburg, Russia. Since some bottles of each beverage were mixed within some of the cases Hyson USA cannot say with certainty at this time the total number of bottle of "Nar pomegranate juice" it received and which has been distributed.

b) the number of such products removed and/or recalled;

**RESPONSE:** A letter was sent on November 25, 2009 to forty-four (44) customers who were supplied the beverages received on October 23, 2009. Attached is a list of the customers who were sent the beverages and the number of cases supplied to each customer.

c) the number of such products received in response to the removal and recall;

**RESPONSE:** No products have been received to date as a result of the recall. However, Hyson USA is holding presently 857 cases of the beverages at the Hyson USA warehouse in Rosemont, Illinois until further order of the court.

(d) the amount of such products in inventory;

**RESPONSE:** See the answer to 2(b) and (c).

(e) all documentation and information regarding Hyson's acquisition and/or purchase of any and all product, whether under the NAR trademark, the GOLDEN or the GOLDEN FOODS trademarks, or the corporate identity of International Golden Foods, including

-2-

any product that contains, or displays domain names "www.goldenfood.com", and,

**RESPONSE:** All the documentation Hyson USA has presently concerning the acquisition of the beverages has been already given to Counsel for the Plaintiff.

(f) the physical location of all such products, separately identifying each product in each request (a) through (e) by product designation or product number, and shall update this report on a weekly basis;

**RESPONSE:** See the answer to 2(b) and (c).

Respectfully Submitted,


s/William J. Sneckenberg
William J. Sneckenberg
Attorney for the Defendant

William J. Sneckenberg
SNECKENBERG, THOMPSON & BRODY, LLP
161 North Clark Street
Suite 3575
Chicago, IL 60601
Phone No. (312) 782-9320
Atty. No. 26052


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 2, 2009, he caused the foregoing Preliminary Report and Response to Preliminary Injunction Order to be filed electronically through the CM/ECF system which caused Notice to be served upon all parties of record.


s/ William J. Sneckenberg

DEC-02-2009  11:24        Hyson Inc                        847 354 4268      P.001/001

| Hyson USA Inc. | | | |
|---|---|---|---|
| Ship SO #6463 | VI | -36 | Michael's Fresh Market |
| Ship SO #6461 | VI | -108 | Carmak #10 Aurora |
| Ship SO #6478 | | -1 | Spartak |
| Ship SO #6477 | LT | -1 | Hatland |
| Ship SO #6493 | | -10 | GF #08 Mundelein |
| Ship SO #6544 | | -1 | Lasalk |
| Ship SO #6558 | | -10 | GF #02 WH |
| Ship SO #6547 | D2 | -1 | Rich's Food & Liquors |
| Ship SO #6553 | | -1 | Carmak #01 |
| Ship SO #6580 | | -100 | Market Place on Oakton |
| Ship SO #6517 | KM | -10 | Joe Caputo #1 |
| Ship SO #6566 | VI | -18 | Harvest Fresh |
| Ship SO #6577 | LT | -20 | Jerry's Fruit |
| Ship SO #6564 | VI | -10 | Villa Park |
| Ship SO #6565 | VI | -18 | Berkeley Finer Foods |
| Ship SO #6551 | VI | -108 | Joe Caputo #3 |
| Ship SO #6552 | | -18 | Joseph's Market Place |
| Ship SO #6557 | VI | -108 | Valli Produce #3 |
| Ship SO #6648 | | -1 | Ann's Bakery |
| Ship SO #6575 | | -15 | GF #07 Rd. |
| Ship SO #6708 | VI | -18 | Produce World #2 |
| Ship SO #6714 | KM | -18 | A&G International Market |
| Ship SO #6743 | VI | -108 | Village Market Place #1 |
| Ship SO #6740 | | -108 | Fresh Farms #3 |
| Ship SO #6766 | | -1 | La Rosetta #2 |
| Ship SO #6767 | KM | -18 | Lewis Fresh Market |
| Ship SO #6774 | KM | -18 | Woodman's #37 |
| Ship SO #6768 | KM | -1 | Russian Food & Gifts |
| Ship SO #6780 | VI | -40 | Sunrise Market #1 |
| Ship SO #6781 | VI | -60 | Sunrise Market #2 |
| Ship SO #6821 | FD | -1 | Duke's Eatery |
| Ship SO #6827 | VI | -10 | 95th Produce |
| Ship SO #6830 | VI | -240 | Brookhaven #2 |
| Ship SO #6829 | VI | -240 | Brookhaven #1 |
| Ship SO #6832 | VI | -120 | Brookhaven #3 |
| Ship SO #6833 | KM | -25 | GF #02 WH |
| Ship SO #6867 | | -5 | Gilmart |
| Ship SO #6868 | | -1 | Bobak's |
| Ship SO #6876 | KM | -20 | Ted' Fruit Market |
| Ship SO #6904 | KM | -1 | Golf Mill Pharmacy |
| Ship SO #6905 | KM | -20 | Produce World #1 |
| Ship SO #6922 | VI | -10 | Elgin Fruit Market #2 |
| Ship SO #6920 | VI | -20 | Elgin Fruit Market #1 |
| Ship SO #6910 | VI | -20 | Valli Produce #2 |
| Ship SO #6945 | | | |

44

$$\sum 1,738 \, cs$$

Exh. B

*rec'd f.
Wm. Sneckenbeg
01-14-2010
@ 8:50 AM
J.And. Rm, - Dirksen
Bldg.*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

INTERNATIONAL GOLDEN FOODS, INC.,
an Illinois corporation,

Plaintiff,

v.

**CIVIL ACTION NO. 09CV6999**

HYSON USA, INC.,
an Illinois corporation, and
Businesses/Entities "A" through "F"

**Judge Wayne R. Andersen**
**Magistrate Judge Jeffrey Cole**

Defendant.

## PRELIMINARY REPORT AND RESPONSE
## TO PRELIMINARY INJUNCTION ORDER

NOW COMES the Defendant, Hyson USA, Inc., by and through its attorneys,

Sneckenberg, Thompson & Brody, LLP, and for its Preliminary Report in Response to the

Preliminary Injunction Order, states as follows:

### Response to Paragraph 2 of Order

2.  Consistent with paragraph (1)(A) above, Hyson USA shall immediately remove from sale

of display, and recall any and all beverage products, catalogs, advertisements, and any

other items or goods bearing NAR, Golden Foods, the infringing marks, the infringing

label design, the domain names "goldenfood.com", the Golden Foods UPC label

configuration, or any product, item, document, thing, or advertisement, that contains any

word, symbol or image that is confusingly similar thereto.  Hyson USA and any and any

and all persons or entities acting in concert with them, shall also submit to the Court and

serve upon Golden Foods counsel within 7 (seven) business days after the entry and

service of any injunction, a preliminary written report detailing:

a) the number of all products produced, manufactured, made, imported, or distributed by

or for Hyson USA and any and all persons or entities acting in concert with them, or under their control, bearing the NAR mark, the Golden Foods Nar label design, any label confusingly similar to the Golden Foods NAR label, the Golden Foods UPC code, the "goldenfood.com" domain name, or any material including any word or words confusingly similar to the marks above;

**RESPONSE:** On October 23, 2009, Hyson U.S.A. received 2,496 cases of beverage supplied under the name "NAR pomegranate juice" or "Melograna" on consignment from East-West Trading based in St. Petersburg, Russia. Since some bottles of each beverage were mixed within some of the cases Hyson USA cannot say with certainty at this time the total number of bottle of "Nar pomegranate juice" it received and which has been distributed.

b) the number of such products removed and/or recalled;

**RESPONSE:** A letter was sent on November 25, 2009 to forty-four (44) customers who were supplied the beverages received on October 23, 2009. Attached is a list of the customers who were sent the beverages and the number of cases supplied to each customer.

c) the number of such products received in response to the removal and recall;

**RESPONSE:** No products have been received to date as a result of the recall. However, Hyson USA is holding presently 857 cases of the beverages at the Hyson USA warehouse in Rosemont, Illinois until further order of the court.

(d) the amount of such products in inventory;

**RESPONSE:** See the answer to 2(b) and (c).

(e) all documentation and information regarding Hyson's acquisition and/or purchase of any and all product, whether under the NAR trademark, the GOLDEN or the GOLDEN FOODS trademarks, or the corporate identity of International Golden Foods, including

-2-

any product that contains, or displays domain names "www.goldenfood.com", and,

**RESPONSE:** All the documentation Hyson USA has presently concerning the acquisition of the beverages has been already given to Counsel for the Plaintiff.

(f) the physical location of all such products, separately identifying each product in each request (a) through (e) by product designation or product number, and shall update this report on a weekly basis;

**RESPONSE:** See the answer to 2(b) and (c).

Respectfully Submitted,

s/William J. Sneckenberg
William J. Sneckenberg
Attorney for the Defendant

William J. Sneckenberg
SNECKENBERG, THOMPSON & BRODY, LLP
161 North Clark Street
Suite 3575
Chicago, IL 60601
Phone No. (312) 782-9320
Atty. No. 26052

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 2, 2009, he caused the foregoing Preliminary Report and Response to Preliminary Injunction Order to be filed electronically through the CM/ECF system which caused Notice to be served upon all parties of record.

s/ William J. Sneckenberg

| Hyson USA Inc. | | | |
|---|---|---|---|
| Ship SO #6463 | VI | -38 | Michael's Fresh Market |
| Ship SO #6461 | VI | -108 | Cermak #10 Aurora |
| Ship SO #6478 | | -1 | Spartak |
| Ship SO #6477 | LT | -1 | Hetland |
| Ship SO #6493 | | -10 | GF #06 Mundelein |
| Ship SO #6544 | | -1 | Lassak |
| Ship SO #6536 | KM | -10 | GF #02 WH |
| Ship SO #6547 | DZ | -1 | Rich's Food & Liquors |
| Ship SO #6553 | | -1 | Cermak #01 |
| Ship SO #6590 | VM | -100 | Market Place on Oakton |
| Ship SO #6617 | KM | -10 | Joe Caputo #1 |
| Ship SO #6566 | VI | -18 | Harvest Fresh |
| Ship SO #6577 | IT | -20 | Jerry's Fruit |
| Ship SO #6564 | VI | -10 | Villa Park |
| Ship SO #6565 | Vi | -18 | Berkeley Finer Foods |
| Ship SO #6661 | VI | -108 | Joe Caputo #3 |
| Ship SO #6652 | Vi | -18 | Joseph's Market Place |
| Ship SO #6657 | Vi | -108 | Valli Produce #3 |
| Ship SO #6645 | | -1 | Ann's Bakery |
| Ship SO #6675 | | -15 | GF #07 RL |
| Ship SO #6706 | VI | -18 | Produce World #2 |
| Ship SO #6714 | KM | -18 | A&G International Market |
| Ship SO #6743 | VI | -108 | Village Market Place #1 |
| Ship SO #6740 | VI | -108 | Fresh Farms #3 |
| Ship SO #6786 | KB | -1 | La Rosella #2 |
| Ship SO #6787 | KM | -18 | Lewis Fresh Market |
| Ship SO #6774 | KM | -18 | Woodman's #37 |
| Ship SO #6786 | KM | -1 | RussianFood & Gifts |
| Ship SO #6780 | Vi | -40 | Sunrise Market #1 |
| Ship SO #6781 | VI | -80 | Sunrise Market #2 |
| Ship SO #6821 | FD | -1 | Duke's Eatery |
| Ship SO #6827 | VI | -10 | 95th Produce |
| Ship SO #6830 | VI | -240 | Brookhaven #2 |
| Ship SO #6829 | Vi | -240 | Brookhaven #1 |
| Ship SO #6832 | Vi | -120 | Brookhaven #3 |
| Ship SO #6833 | KM | -25 | GF #02 WH |
| Ship SO #6867 | | -5 | Gilmart |
| Ship SO #6868 | | -1 | Bobak's |
| Ship SO #6876 | KM | -20 | Ted' Fruit Market |
| Ship SO #6904 | KM | -1 | Golf Mill Pharmacy |
| Ship SO #6905 | KM | -20 | Produce World #1 |
| Ship SO #6922 | Vi | -10 | Elgin Fruit Market #2 |
| Ship SO #6920 | VI | -20 | Elgin Fruit Market #1 |
| Ship SO #6910 | Vi | -20 | Valli Produce #2 |
| Ship SO #6945 | | -1 | Spartak |

$\sum 1,738 \, cs$

(44)

Exh C.

## DECLARATION OF MANSOUR AMIRAN

Mansour Amiran, under penalty of perjury of the laws of the United States, states: That he is President of International Golden Foods, Inc., an Illinois corporation, and that he has read, is familiar with, and has personal knowledge of the contents of the foregoing Motion for Default, Contempt and Sanctions, and that to the best of his knowledge, information and belief the allegations contained therein are true and correct.

In addition, the undersigned further declares that;

1. He is President of International Golden Foods and has held that position since the inception of the company.

2. That he selected and approved the trademark NAR® for use on Pomegranate Juice, and further states that the mark is fanciful and has no known linguistic or other meaning other than its association with the NAR® Pomegranate Juice.

3. That he has never used any source for Pomegranate Juice other than those that are associated with and indicated by the country of origin statements on the GOLDEN® NAR® Pomegranate Juice.

4. That Golden Foods has never obtained pomegranate juice from any company, outlet, source or other entity in Azerbaijan.

5. That Golden Foods has never given rights to sell NAR® Pomegranate Juice to any company, corporation, individuals or entities other than the stores and distributorships to which they ship the genuine Golden Foods NAR® Pomegranate Juice.

6. That Golden Foods has always used a label with a golden yellow color dominance in connection with the genuine NAR® Pomegranate Juice.

7. That the counterfeit NAR® Pomegranate Juice sold by Hyson has decimated the sales of

the real, original and genuine Golden Foods NAR® Pomegranate Juice in the Chicago

area, which as substantially affected the sales of Golden Foods products.

8.      That he has also visited a number of stores that had previously a long record of successful

sales of the genuine Golden Foods NAR® Pomegranate Juice, and that due to economic

reasons, they have purchased the cheaper counterfeit Hyson NAR® Pomegranate Juice.

9.      That his personal observations were confirmed by conversations with store managers and

personnel, which is that there has been not one recall of any of the counterfeit Golden

Foods NAR® Pomegranate Juice sold by Hyson from any store or other sales location

that he has observed in the Chicago area.

10.     That the economic damage caused to Golden Foods has been severe due to the presence

of the lower quality, counterfeit Hyson counterfeit NAR® Pomegranate Juice in that

Golden Foods spends hundreds of thousands of dollars in marketing and advertising of

the Genuine NAR® Pomegranate Juice. That market for genuine NAR® Pomegranate

Juice has been severely impacted, and for all practical purposes ended, due to the

presence of the inferior counterfeit Hyson NAR® Pomegranate Juice in the market,

costing Golden Foods huge sums in lost sales, lost business opportunity and lost market

share.

11.     That, based upon his observations and research of the counterfeit NAR® Pomegranate

Juice sold under the Golden Foods label by Hyson, there has been no decrease in the

number of Hyson counterfeit NAR® Pomegranate Juice on sale in the Chicago area, and

that recently the label on the counterfeit Golden Foods NAR® Pomegranate Juice has

changed, indicating to the undersigned that the counterfeit NAR® Pomegranate Juice is

on sale in more locations than it was previously available from in 2009.

-2-

12. That the counterfeit NAR® Pomegranate Juice sold by Hyson has decimated the sales of the real, original and genuine Golden Foods NAR® Pomegranate Juice in the Chicago area, which as substantially affected the sales of Golden Foods products.

13. That based upon the undersigned's experience, the sale of genuine NAR® Pomegranate Juice, packaged, imported and sold by International Golden Foods has been seriously and adversely affected by the presence of the Hyson counterfeit NAR® Pomegranate Juice in the market.

14. That the undersigned is concerned about the safety issues surrounding the presence of counterfeit food products in the industry, most particularly the counterfeit NAR® Pomegranate Juice sold by Hyson, which juice appears to originate with Golden Foods.

15. That based upon all identifiers on the bottles indicating the counterfeit juice originates with Golden Foods, the undersigned is concerned and fearful for the liability matters connected with a counterfeit food product, namely NAR® Pomegranate Juice originating from Hyson, still being on the market, and that each and every day the counterfeit NAR® Pomegranate Juice remains in the marketplace only increases his fear for the safety of the public that purchase or consume the counterfeit NAR® Pomegranate Juice.

16. That the counterfeit product, namely the counterfeit Hyson NAR® Pomegranate Juice being in the market, with Golden Foods having no control over the source, contents, quality or storage conditions related thereto, ahve increased the personal stress level of the undersigned due to fear for the safety of members of the public that are exposed to this product in the marketplace, or that may consume the counterfeit NAR® Pomegranate Juice.

17. That the inferior quality of the NAR® Pomegranate Juice sold by Hyson has given any

who consume it the false impression that Golden Foods would sell a bad tasting, poor

quality juice product, which also affects the impression of quality held by members of the

public purchasing or eating any of the thousands of food products marketed, distributed

and sold by Golden Foods. This has seriously and adversely affected the reputation of

Golden Foods generally as to all products in its product line, not just the pomegranate

juice product, NAR® Pomegranate Juice. In addition to safety concerns, the poor quality

of the counterfeit Hyson NAR® Pomegranate Juice has affected many other products,

including but not limited to:  GOLDEN® vegetables, pickles, olives, dried beans,

legumes, rices, dried fruits, figs; GOLDEN® dates, GOLDEN RICE™; GOLDEN® oils,

GOLDEN® eggplant, chickpea and eggplant dips; CRISPA® dried noodles and pastas;

GOLDEN DEGLET NOOR™ dates; GOLDEN® condiments; GOLDEN® pickled

garlics; GOLDEN® cookies; GOLDEN® dates and processed dates; and many other

products.

Further Declarant Sayeth Not.

Respectfully submitted,

_____

Mansour Amiran, President
International Golden Foods, Inc.

"OFFICIAL SEAL"
Graciela Ranzzoni
Notary Public, State of Illinois
My Commission Expires Oct. 27, 2012

Subscribed and Sworn before me, this ___15th___ January, 2010

_____
Notary Public

My commission expires: ___10|20|2012.___

Prepared by:

Elizabeth Hunt Schoettly, Esq.
Law Offices of Elizabeth H. Schoettly
1355 West Estes Ave., Suite L3
Chicago, IL 60626
Phone: 773-761-4590
Email: jehschoettly@juno.com
IL ARDC No. 3126573

Executed this _____ _____, 2009, in
Bensenville, Illinois.

_____

Mansour Amiran

$\mathcal{E}_x h\ D$

## DECLARATION OF RICARDO ROBLEDO

Ricardo Robledo, under penalty of perjury of the laws of the United States, states: That he is the Sales Manager for the Chicago area for International Golden Foods, Inc., an Illinois corporation, and that he has read, is familiar with, and has personal knowledge of the factual allegations, statements and contents of the following Declaration in Support of the Plaintiff's Motion for Default, Contempt and Sanctions, and that to the best of his knowledge, information and belief the allegations contained therein are true and correct.

In addition, the undersigned further declares that;

1. He has been sales manager for the Chicago Area for International Golden Foods for the prior ten months, and that in that position he is required to visit numerous stores, existing customers and to visit businesses for the purpose of developing sales of the hundreds of food products sold by or represented by International Golden Foods.

2. That in about October, 2009, he noticed that a number of stores were selling NAR® Pomegranate Juice under the Golden Foods trademark for NAR®.

3. That the stores that had the NAR® juice on display were not stores that had ordered the NAR® pomegranate juice from Golden Foods.

4. That upon investigation, he learned from a number of store owners that the NAR® Pomegranate Juice had on display, numerous cartons of this juice, none of which was packaged or bottled with the proper Golden Foods labels, packaging or containers.

5. That upon speaking with numerous store owners, he learned that the persons/entity selling this counterfeit NAR® Pomegranate Juice had informed him that the juice was far less expensive than the juice sold by Golden Foods.

6. That the store owners informed the undersigned that Hyson represented that they had the full trademark rights in order to sell the NAR® Pomegranate Juice and that the product,

while less expensive, was completely and legally theirs to sell, with Golden Foods full agreement.

7.   That based upon observation, stores that had displays of the counterfeit Golden Foods NAR® Pomegranate Juice in October and November, 2009 continued to have those same displays, including replacement of any previously sold stock, even into late December and as late as January 11, 12, 13, 2010.

8.   That he purchased these counterfeit NAR® Pomegranate Juice bottles from the stores and those receipts are attached to this Declaration.

9.   That he noticed that some of the stores that did not have any counterfeit NAR® Pomegranate Juice in 2009, had the counterfeit NAR® Pomegranate Juice in January, 2010, namely the Village Marketplace, among others.

10.   That his personal observations were confirmed by conversations with store managers and personnel, which is that there has been not one recall of any of the counterfeit Golden Foods NAR® Pomegranate Juice sold by Hyson from any store or other sales location that he has observed in the Chicago area.

11.   That, based upon his observations and research of the counterfeit NAR® Pomegranate Juice sold under the Golden Foods label by Hyson, there has been no decrease in the number of items on sale, and that recently the label on the counterfeit Golden Foods NAR® Pomegranate Juice has changed, indicating to the undersigned that the counterfeit NAR® Pomegranate Juice is on sale in more locations than it was previously available from in 2009.

12.   That the counterfeit NAR® Pomegranate Juice sold by Hyson has decimated the sales of the real, original and genuine Golden Foods NAR® Pomegranate Juice in the Chicago area, which as substantially affected the sales of Golden Foods products.

13. That upon consultation with, and at the direction of, Golden Foods President, Mansour Amiran, he has additionally visited stores that are, and are not presently customers of Golden Foods to discuss and offer Golden Foods original NAR® Pomegranate Juice to them and has been told that these store owners, that the quality of the NAR® Pomegranate Juice in the red label jars (the counterfeit NAR® Pomegranate Juice), is not of the same quality as Golden Foods NAR® Pomegranate Juice. These stores have received complaints regarding these bottles of inferior juice, which are the counterfeit NAR® Pomegranate Juice, and only about the counterfeit NAR® Pomegranate Juice, never regarding the genuine Golden Foods NAR® Pomegranate Juice.

14. That based upon the undersigned's experience, the sale of genuine NAR® Pomegranate Juice, packaged, imported and sold by International Golden Foods has been seriously and adversely affected by the presence of the Hyson counterfeit NAR® Pomegranate Juice in the market.

15. That the undersigned is concerned about the safety issues surrounding the presence of counterfeit food products in the industry, most particularly the counterfeit NAR® Pomegranate Juice sold by Hyson, which juice appears to originate with Golden Foods, the employer of the undersigned.

16. That the presence of the counterfeit NAR® Pomegranate Juice sold by Hyson has

_(signature)_

Ricardo Robledo
Sales Manager, Chicago Area
International Golden Foods, Inc.

Subscribed and Sworn before me, this _7th_ January, 2010

_(signature)_

Notary Public

My commission expires: _Aug 15/2011_

OFFICIAL SEAL
JOHN C. TREZZI, MD
Notary Public - State of Illinois
My Commission Expires Aug 15, 2011

Prepared by:

Elizabeth Hunt Schoettly, Esq.
Law Offices of Elizabeth H. Schoettly
1355 West Estes Ave., Suite L3
Chicago, IL 60626
Phone:  773-761-4590
Email:  jehschoettly@juno.com
IL ARDC No. 3126573

-4-

Exh E

Search the Web: [_____]  Search  My Juno | My Account

Elizabeth Schoettly (jshschoettly@juno.com) | Switch User
Your Weather | Return to Classic Email | Sign Out

Home    Mail    Address Book

## Search: "wjs"  10 Messages, 8 Unread
Options | Help | Feedback

| Delete | Mark as... | Move to... | | Page 1 of 1 | Show 100 |

Check Mail
Compose New

10 message(s) were found matching "wjs". **Advanced Search**     Close

wjs  Search

| Inbox (999+) | | | | | |
| --- | --- | --- | --- | --- | --- |
| | From | Subject | In Folder | Date / Time | Size |
| Draft | □ William Sneckenberg | RE: Igf v Hyson USA Agreed Order | IGF v HYSON | 11/30/09 12:42 PM | 3K |
| Sent (720) | □ Elizabeth Schoettly | Igf v Hyson USA Agreed Order [2 | Sent | 11/25/09 10:26 AM | 99K |
| Trash    Empty | □ Elizabeth Schoettly | Agreed Order IGF v Hyson USA | Sent | 11/25/09 10:13 AM | 46K |
| Junk Mail (71)  Empty | □ Elizabeth Schoettly | Re: Agreed Order for IGF v Hyson | Sent | 11/24/09 07:41 PM | 14K |
| | □ Elizabeth Schoettly | RE: Agreed Order for IGF v Hyso | Sent | 11/24/09 06:12 PM | 9K |
| My Folders   Add | □ William Sneckenberg | RE: Agreed Order for IGF v Hyson | IGF v HYSON | 11/24/09 04:06 PM | 4K |
| Amazon (16) | □ Elizabeth Schoettly | Agreed Order for IGF v Hyson | Sent | 11/24/09 01:26 PM | 111K |
| Ayden ... | □ Elizabeth Schoettly | Re: International Golden Foods v | Sent | 11/24/09 08:59 AM | 6K |
| CHBRR (67) | □ Elizabeth Schoettly | International Golden Foods v Hys | Sent | 11/24/09 07:59 AM | 3K |
| Connie... (20) | □ Elizabeth Schoettly | NAR | Sent | 11/23/09 01:34 PM | 43K |
| EFT (11) | □ Elizabeth Schoettly | RE: General Mills IP Holdings II, L | Sent | 11/19/09 03:47 PM | 8K |
| Emb so... (7) | □ Elizabeth Schoettly | RE: General Mills IP Holdings II, | Sent | 11/19/09 03:38 PM | 17K |
| EmbLib... (8) | □ Holly Newman | FW: General Mills IP Holdings II, LL | Inbox | 11/19/09 03:25 PM | 27K |
| FDI IC... (13) | □ Kenny Timothy M. | RE: General Mills IP Holdings II, LL | Genl Mills v | 11/19/09 03:18 PM | 11K |
| FabMar... (19) | □ Kebe_Hsagenson@mnd.uscour | General Mills IP Holdings II, LLC v. | Genl Mills v | 11/19/09 03:12 PM | 4K |
| Freela... (59) | □ Marie E. Nygaard | General Mills v Soyyight, et al. - voir | Genl Mills v | 11/19/09 02:49 PM | 56K |
| Genl M... (226) | □ Marie E. Nygaard | RE: General Mills v Soyyight, et al - | Genl Mills v | 11/19/09 01:59 PM | 11K |
| Golden... (79) | □ Elizabeth Schoettly | Re: General Mills v. Soyyight, et a | Sent | 11/19/09 01:48 PM | 26K |
| IGF v ... | □ Elizabeth Schoettly | RE: General Mills v. Soyyight et al | Sent | 11/19/09 01:32 PM | 13K |
| Ingerm... (28) | □ Marie E. Nygaard | General Mills v. Soyyight, et al. - 6th | Genl Mills v | 11/19/09 01:16 PM | 1682K |
| Jan (2) | □ Ross Brandon M. | Re: General Mills v. Soyyight et al. – | Genl Mills v | 11/10/09 10:30 AM | 7K |
| Madica... (1) | □ Bechtel Stephanie | General Mills IP Holdings v. Soyyigt | Genl Mills v | 11/18/09 05:01 PM | 2601K |
| Neal K... (3) | □ Bechtel Stephanie | General Mills IP Holdings v. Soyyigt | Genl Mills v | 11/18/09 04:34 PM | 1790K |
| New Fo... | □ ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 11/18/09 03:59 PM | 6K |
| Numero... (13) | □ Elizabeth Schoettly | RE: General Mills v. Soyyight et al | Sent | 11/18/09 06:19 AM | 19K |
| PASSWO... (3) | □ Elizabeth Schoettly | RE: Soyyigt, a little fun along the w | Sent | 11/17/09 08:31 PM | 26K |
| Patter... | □ Elizabeth Schoettly | Re: General Mills v Soyyight (defe | Sent | 11/17/09 06:10 PM | 188K |
| Read I... (142) | □ Jackie Polk | Re: General Mills v Soyyight (defend | Genl Mills v | 11/17/09 03:11 PM | 3K |
| Schoet... | □ Elizabeth Schoettly | General Mills v Soyyight (defendai | Sent | 11/17/09 12:34 PM | 296K |
| Sprewe... (8) | □ Elizabeth Schoettly | RE: Fw: General Mills v. Soyyight, | Sent | 11/17/09 08:55 AM | 20K |
| Stitch... (42) | | | | | |

Select: All | None

TICKLE (4)
Tech W...
Techni...
Toni (34)
WP Cor...
Wrest (12)
Wrest ... (38)
bagpip... (5)
belief... (4)
design...
ebay (385)
ehaper... (399)
jokes (1)
music
needAt... (7)
politl... (57)
produc... (15)
survey... (13)

Netflix
Free Trial

| Delete | Mark as... | Move to... | | Page 1 of 1 | Show 100 |

The New 2010
Nissan Altima
Sedan

$189
/MONTH LEASE
FOR 39 MONTHS*

Click for Offer Details

LOOK CLOSER  Nissan
Delivers



p. 1          773-761-4590          Elizabeth S

[2]

uno Message Center

http://webmail.bj.juno.com/webmail/new/5?userinfo=b02c29a6d9206...

Received Time Jan. 11. 2010  10:11AM No. 0990

[2]
uno Message Center

http://webmail.juno.com/webmail/new/5?userinfo=b02c29a6d9200.

Received Time Jan. 11. 2010 10:11AM No. 0990



My Juno | My Account | Give Juno | Our Services | Advertisers | Privacy Statement | Terms of Service | Help

United Online      FTD    |    Classmates.com    |    MyPoints    |    MySite    |    Juno    |    NetZero    |    FreeInternet.com

© 2000 - 2010 Juno, Inc. Juno is a registered trademark, and the Juno logo is a trademark of Juno, Inc.

Search the Web: [_____]   Search   My Juno | My Account

Home     Mail     Address Book

Elizabeth Schoettly (jehschoettly)@juno.com) | Switch User
Your Weather | Return to Classic Email | Sign Out

**Search: "trial"** 15 Messages, 9 Unread          Options  |  Help  |  Feedback

Check Mail

Compose New

| Delete | Mark as... | Move to... | | Page 1 of 1 | Show 100 |

15 message(s) were found matching "trial", Advanced Search          Close

trial [_____] Search

Inbox (999+)
Draft
Sent (720)
Trash       Empty
Junk Mail (71)  Empty

My Folders   Add
 Amazon (10)
 Aydin ...
 CHBRR (67)
 Connie... (20)
 EFT (11)
 Emb so... (7)
 EmbLib... (6)
 FBI IC... (13)
 FabMar... (10)
 Freela... (59)
 Genl M... (226)
 Golden... (79)
 IGF v ...
 Ingerm... (25)
 Jan (2)
 Medica... (1)
 Neal K... (3)
 New Fo...
 Numero... (13)
 PASSWO... (3)
 Patler...
 Road I... (142)
 Schoet...
 Sprewe... (8)
 Stitch... (42)
 TICKLE (4)
 Tech W...
 Techni...
 Toni (34)
 WP Cor...
 Virest (12)
 Wrest ... (38)
 bagpip... (5)
 belief... (4)
 design...
 ebay (385)
 ehsper... (399)
 jokes (1)
 music
 needAt... (7)
 politi... (57)
 produc... (16)
 survey... (13)

☐ Select: All | None

| | From | Subject | In Folder | Date / Time | Size |
|---|---|---|---|---|---|
| ☐ | Emille Kaplan | Intl Golden Foods v. Hyson | IGF v HYSON | 12/07/09 09:59 AM | 8K |
| ☐ | William Sneckenberg | RE: Igf v Hyson USA Agreed Order | IGF v HYSON | 11/30/09 12:42 PM | 3K |
| ☐ | Elizabeth Schoettly | Igf v Hyson USA Agreed Order (2 | Sent | 11/28/09 10:26 AM | 58K |
| ☐ | Elizabeth Schoettly | Agreed Order IGF v Hyson USA | Sent | 11/26/09 10:13 AM | 46K |
| ☐ | Elizabeth Schoettly | Re: Agreed Order for IGF v Hyso | Sent | 11/24/09 07:41 PM | 14K |
| ☐ | Elizabeth Schoettly | RE: Agreed Order for IGF v Hyso | Sent | 11/24/09 08:12 PM | 9K |
| ☐ | William Sneckenberg | RE: Agreed Order for IGF v Hyson | IGF v HYSON | 11/24/09 04:06 PM | 4K |
| ☐ | Elizabeth Schoettly | Agreed Order for IGF v Hyson | Sent | 11/24/09 01:26 PM | 111K |
| ☐ | Elizabeth Schoettly | Re: International Golden Foods v | Sent | 11/24/09 00:58 AM | 6K |
| ☐ | Elizabeth Schoettly | International Golden Foods v Hys | Sent | 11/23/09 07:59 AM | 3K |
| ☐ | Elizabeth Schoettly | NAR | Sent | 11/23/09 01:34 PM | 43K |
| ☐ | ecf-notice@ilnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 03/29/09 03:29 PM | 6K |
| ☐ | Norton | Your Norton AntiVirus trial has expi | PASSWORDS | 09/05/09 01:23 PM | 41K |
| ☐ | Amazon Prime | Amazon Prime Free Trial Membersh | ehsper/personal | 08/03/08 02:04 PM | 5K |
| ☐ | jehschoettly@juno.com | trial software for Wjadows XP | Sent | 01/17/07 07:46 AM | 5K |

☐ Select: All | None

| Delete | Mark as... | Move to... | | Page 1 of 1 | Show 100 |

SAVE BIG!

SAVE UP TO $3.70
FROZEN DINNERS
Get Coupon ▶

SAVE UP TO $3.15
GRANOLA BARS
Get Coupon ▶

SAVE UP TO $2.95
DINNER ROLLS
Get Coupon ▶

GET MORE COUPONS ▶

COUPONS

Search the Web: [        ]  Search    My Juno | My Account

Home    Mail    Address Book

Elizabeth Schoelly (jelschoelly@juno.com)  |  Switch User
Your Weather  |  Return to Classic Email  |  Sign Out

Search: "sneckenberg"  2 Messages, 0 Unread                    Options   |  Help   | Feedback

Check Mail

Compose New

sneckenberg    Search

| Delete | Mark as... | Move to... |              | Page: 1 | of 1 | | Show 100 |

2 message(s) were found matching "sneckenberg". Advanced Search          Close

Select: All | None

| | From | Subject | In Folder | Date / Time | Size |
|---|---|---|---|---|---|
| ☐ | William Sneckenberg | RE: Igf v Hyson USA Agreed Order | IGF v HYSON | 11/30/09 12:42 PM | 3K |
| ☐ | William Sneckenberg | RE: Agreed Order for IGF v Hyson | IGF v HYSON | 11/24/09 04:09 PM | 4K |

Select: All | None

| Delete | Mark as... | Move to... |              | Page: 1 | of 1 | | Show 100 |

Inbox (998+)
Draft
Sent (720)
Trash      Empty
Junk Mail (71)  Empty

My Folders    Add
  Amazon (10)
  Aydin ...
  CHBRR (67)
  Connie... (20)
  EFT (11)
  Emb so... (7)
  EmbLib... (6)
  FBI IC... (13)
  FabMar... (10)
  Freela... (59)
  Genl M... (226)
  Golden... (79)
  IGF v ...
  Ingerm... (26)
  Jan (2)
  Medica... (1)
  Neal K... (3)
  New Fo...
  Numero... (13)
  PASSWO... (3)
  Patter...
  Read I... (142)
  School...
  Sprewe... (8)
  Stitch... (42)
  TICKLE (4)
  Tech W...
  Technit...
  Toni (34)
  WP Cor...
  Wrest (12)
  Wrest ... (36)
  bagpip... (5)
  belief... (4)
  design...
  ebay (385)
  ehsper... (399)
  jokes (1)
  music
  needAL... (7)
  politi... (57)
  produc... (16)
  survey... (13)

Netflix
Free Trial

http://webmaillb.juno.com/webmail/new/5?userinfo=b02e29a6d920b...

uno Message Center

[2]

Received Time Jan. 11.  2010  10:11AM No. 0990



My Juno | My Account | Give Juno | Our Services | Advertisers | Privacy Statement | Terms of Service | Help

United Online      FTD    |    Classmates.com    |    MyPoints    |    MySite    |    Juno    |    NetZero    |    FreeInternet.com

© 2000 - 2010 Juno, Inc. Juno is a registered trademark, and the Juno logo is a trademark of Juno, Inc.

uno Message Center    [2]

http://webmail.bjuno.com/webmail/new/57?userinfo=b020c29a6d9205...

Received Time Jan. 11.  2010  10:11AM No. 0990

[ = ]

Home        Mail        Address Book

Elizabeth Schoetty (jerschoetty@juno.com) | Switch User
Your Weather | Return to Classic Email | Sign Out

## Search: "ecf"  71 Messages  24 Unread

Options | Help | Feedback

| | Delete | Mark as... | Move to... | | Page: 1 of 1 | Show 100 |

ecf [_____] Search

71 message(s) were found matching "ecf". Advanced Search                     Close

Check Mail
Compose New

| | Select: All | None |
|---|---|

| | From | Subject | In Folder | Date / Time | Size |
|---|---|---|---|---|---|
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Inbox | 12/29/09 02:52 PM | 5K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Inbox | 12/29/09 02:45 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Inbox | 12/28/09 02:20 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | U.S. District Court Holiday Closu | Inbox | 12/23/09 01:18 PM | 3K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Inbox | 12/22/09 11:32 AM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Inbox | 12/22/09 11:30 AM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Inbox | 12/17/09 12:34 PM | 8K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Inbox | 12/17/09 12:31 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Updated E-Filing Procedure Guides | Inbox | 12/11/09 05:23 PM | 3K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Inbox | 12/10/09 11:50 AM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Inbox | 12/10/09 11:48 AM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 12/02/09 02:01 PM | 5K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 12/02/09 01:11 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Important Local Rule Changes Affec | Genl Mills v | 11/30/09 08:01 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 11/23/09 03:08 PM | 5K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 11/20/09 08:27 AM | 5K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 11/18/09 03:56 PM | 6K |
| | Larry_Appelson@jind.uscourts. | Fw: ECF Login Information | PASSWORDS | 11/18/09 03:29 PM | 5K |
| | ecf-notice@mnd.uscourts.gov | Important Changes Affecting All A | Genl Mills v | 11/16/09 08:38 PM | 4K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 11/06/09 11:32 AM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 11/05/09 11:33 AM | 5K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 11/05/09 11:31 AM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 11/04/09 04:49 PM | 5K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 11/04/09 04:46 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 10/06/09 04:24 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 10/02/09 06:05 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 10/02/09 03:45 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/29/09 03:29 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/28/09 08:24 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Local Rule Amendments -- U.S. D | Genl Mills v | 09/24/09 05:02 PM | 3K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/24/09 01:49 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/23/09 04:00 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/22/09 03:57 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/21/09 04:38 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/18/09 03:22 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/17/09 09:59 AM | 6K |
| | ecf-notice@mnd.uscourts.gov | Important New Features in CM/EC | Genl Mills v | 09/14/09 05:41 PM | 4K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/11/09 05:37 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Important Security Issue for CM/ | Genl Mills v | 09/11/09 05:31 PM | 4K |
| | Mike_Chulich@mnd.uscourts | Re: U.S. District Court - Minneso | Genl Mills v | 09/03/09 02:58 PM | 13K |
| | Elizabeth Schoetty | Re: U.S. District Court - Minneso | Genl Mills v | 09/03/09 01:51 PM | 8K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/03/09 12:28 PM | 6K |
| | Elizabeth Schoetty | no attachment, only copy of entr | Genl Mills v | 09/03/09 11:31 AM | 4K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/02/09 08:16 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 09/02/09 04:40 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 08/21/09 02:58 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 08/21/09 01:54 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 08/20/09 05:30 PM | 5K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 08/10/09 06:51 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 08/10/09 06:46 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 08/10/09 06:43 PM | 11K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 08/10/09 06:27 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 08/10/09 06:26 PM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 08/07/09 10:10 AM | 6K |
| | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Genl Mills v | 08/06/09 03:24 PM | 6K |

Inbox (999+)
Draft
Sent (720)
Trash        Empty
Junk Mail (71)  Empty

My Folders   Add
Amazon (10)
Aydin ...
CHBRR (67)
Connie... (20)
EFT (11)
Emb zo... (7)
EmbLib... (6)
FBI IC... (13)
FabMar... (10)
Freela... (59)
Genl M... (228)
Golden... (79)
IGF v ...
Ingerm... (26)
Jan (2)
Medica... (1)
Neal K... (3)
New Fo...
Numero... (13)
PASSWO... (3)
Patter...
Read I... (142)
School...
Sprewa... (8)
Stitch... (42)
TICKLE (4)
Tech W...
Techni...
Toni (34)
WP Cor...
Wrest (12)
Wrest ... (38)
bagpip... (5)
belief... (4)
design...
ebay (385)
ehsper... (399)
jokes (1)
music
needAt... (7)
politi... (67)
produc... (16)
survey... (13)

Netflix
Free Trial

1/11/2010 10:15

p. 1        773-761-4590        Elizabeth S

| | | | | | |
|---|---|---|---|---|---|
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 08/06/09 01:17 PM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 08/06/09 11:43 AM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 08/03/09 03:46 PM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 08/03/09 03:42 PM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 08/03/09 03:41 PM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 08/03/09 03:39 PM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 08/03/09 03:37 PM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 07/31/09 12:03 PM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 07/31/09 11:59 AM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 07/28/09 03:00 PM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 07/24/09 01:59 PM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 07/24/09 11:44 AM | 6K |
| ☐ | ecf-notice@mnd.uscourts.gov | Activity in Case 0:09-cv-01010-DW | Geni Mills v | 07/23/09 10:08 AM | 5K |
| ☐ | Mike_Church@mnd.uscourts.g | U.S. District Court - Minnesota - EC | Geni Mills v | 07/23/09 10:06 AM | 220K |
| ☐ | Generic ecfs Account | ECFS Reply ECFS - Email Filing | Geni Mills v | 07/10/07 03:29 AM | 6K |
| ☐ | Elizabeth Schaerdy | ECFS - Email Filing | Geni Mills v | 07/10/07 03:28 AM | 4K |

Select: All | None

| Delete | Mark as... | Move to... | | | Page: 1 of 1 | | | Show 100 |
|---|---|---|---|---|---|---|---|---|

My Juno | My Account | Give Juno | Our Services | Advertisers | Privacy Statement | Terms of Service | Help

| United Online | FTD | Classmates.com | MyPoints | MySite | Juno | NetZero | FreeInternet.com |
|---|---|---|---|---|---|---|---|

© 2000 - 2010 Juno, Inc. Juno is a registered trademark, and the Juno logo is a trademark of Juno, Inc.

Received Time Jan. 11.  2010  10:15AM No. 0992