MI+N

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

INTERNATIONAL GOLDEN FOODS, INC.,
an Illinois corporation,

    Plaintiff,

v.

HYSON USA, INC.,
an Illinois corporation,

    Defendant

CIVIL ACTION NO. 09CV6999

Judge Wayne R. Andersen

Magistrate Judge Jeffrey Cole

FILED
2-4-2010
FEB 04 2010
WAYNE R. ANDERSEN
U.S. DISTRICT COURT JUDGE

### PLAINTIFF INTERNATIONAL GOLDEN FOODS, INC.'S *EMERGENCY & SECOND* MOTION and MEMORANDUM FOR RULE TO SHOW CAUSE WHY CONTEMPT, SANCTIONS AND RELATED RELIEF ARE APPROPRIATE AS TO HYSON, USA, INC.

NOW COMES International Golden Foods, Inc., ("Golden Foods"), and moves this Court enter an order to show cause why Hyson, USA, Inc., should not be held in civil contempt for violating the Agreed Order for Preliminary Injunction entered by this Court on November, 25, 2009, and for a rule to show cause why Hyson's counsel of record should not be subject to sanctions for failure to obtain Hyson USA, Inc.'s compliance with the orders of this Court regarding the recall of product, namely, counterfeit NAR® Pomegranate Juice is being sold and distributed *even to this very moment, upon information discovered by simple investigation by the Plaintiff.*

This motion is presented as an Emergency Motion for the reason that the stores listed on the initial report filed December 2, 2009, (Exhibit L), and the subsequent report of recall submitted by Hyson on January 29, 2010, are incomplete. Hyson has not recalled the product,

-1-

namely the counterfeit NAR® Pomegranate Juice, from all store shelves in the Chicago area, it has ***expanded the distribution of the counterfeit NAR® Pomegranate Juice to additional stores*** in the Chicago area as set forth in Exhibit A attached.

Expansion of distribution of the counterfeit NAR® Pomegranate Juice is proof positive of the true intent of Hyson. It is proof positive of Hyson's disregard of the lawful order of this Court, and Hyson's total disregard for the laws and rules of Court, the Lanham Act and the other relevant statutes and rules governing the conduct of parties before the US District Court and the rules governing the conduct of attorneys, for this conduct indicates that Hyson's attorneys have no control or ability to influence the behavior of their client, Hyson USA, Inc. Either that, or the attorneys representing Hyson are actively working in concert with their Client to avoid compliance with the lawful preliminary injunction issued by this Court.

Golden Foods further seeks a ruling of contempt against the defendant Hyson USA, Inc., ("Hyson"), in part for the reasons set forth in the attached memorandum filed January 15, 2010 (renewed herein and attached as Exhibit B hereto) and requests a finding of contempt against Hyson based on Golden Foods earlier motion (first). for contempt, and also submits a petition for Rule to Show Cause herewith, petitioning this Court find Hyson in serious and willful violation of this Court's lawful orders. Golden Foods further requests this case be made exceptional under the meaning of the Lanham Act, as that term is construed pursuant to 15 U.S.C. § 1117(a), which allows a court to award reasonable attorney's fees to the wronged and prevailing party if the case is exceptional due to the willful nature of the infringement caused by the defendant in this Case, namely, Hyson's use of and continued distribution of, pomegranate juice that is packaged as if it originated with Golden Foods, but where Golden Foods had no

connection with the juice, the source of the juice, or its quality and an injunction was entered to prevent further damage to Golden Foods by the presence of this juice in the marketplace.

In addition, Golden Foods requests a finding of contempt, *per se,* for Hyson's failure to cure its counterfeiting of the Golden Foods NAR® Pomegranate Juice trademark, and trade dress, under the Trademark Counterfeiting Act, 15 U.S.C. § 1117 (c) a and pendent state law.

In addition, sanctions are appropriate for Hyson's wilful flaunting of the November 25, 2009 Order of this Court, and for Hyson's course of conduct that includes possibly the most egregious example of feckless obedience to the laws of the US and a lawful order of this US District Court. Golden Foods submits herewith the evidence of ongoing infringement of its rights, now **_almost ten weeks after_** entry of this Court's Order. That order demanded obedience to the Lanham Act, the Trademark Counterfeiting Act, the laws governing injunctions, the state laws of Illinois, and most importantly, the law of the land–all of which is evidenced by the terms of the order itself, which was an **"AGREED ORDER..."** [which Order is attached as Exhibit C]. Hyson's agreement with that Order indicated clearly it understood it was required to obey that order, yet it has done everything BUT obey the terms of this Court's lawful order. And, they have expanded their lawless activity by expanding the distribution of the counterfeit NAR® Pomegranate Juice.

A preliminary injunction is entered by a court to preserve the *status quo*, or to prevent further damage to moving party when continued presence of the product in question would cause irreparable harm to the party seeking an injunction and recall of a product. (*Playboy Entertainment Group, Inc., v. United States,* 30 F. Supp 2d 702, (D Del 1998); *US v Playboy Entm't Group, Inc.* 529 U.S. 803 (2000).) Here, and as is discussed below, the injunction was entered to *prevent* further damage to Golden Foods by Hyson. And yet, that damage continues,

and in fact has been *increased several fold due to Hyson's willful flouting of this Court's lawful order.*

### Hyson Has Not Done Anything to Recall the Counterfeit NAR® Pomegranate Juice®

Hyson USA submitted a report wherein they indicated they recalled the offending, counterfeit NAR® Pomegranate Juice from stores, beginning with stores that had more than 40 cases of the offending juice shipped to them by Hyson. Investigation has revealed that of the stores where products were recalled, which were listed as:

Cermak #10 Aurora

Joe Caputo #3

Valli Produce #3

Village Market Place #1

Fresh Farms #3

Sunrise Market #1 and Sunrise Market #2

Brookhaven, No's. 1, 2 & 3

Plus, and this is the shocking part, stores were told by Hyson representatives to keep the product on display and "stick it to Golden Foods."

Such is the very definition of willful, exceptional, intentional infringement of a trademark that demands exceptional remedies, including treble damages, attorney's fees, costs of the case, and in this case, penalties for perjurious statements to the court and contempt penalties for failure to obey a lawful order of this Court.. The report filed with the Court in January was and remains a lie, and a total fabrication as can be shown by the list of stores where Golden Foods found the counterfeit NAR® Pomegranate Juice even ten days after Hyson certified

thorugh the representations of its counsel that it had removed the counterfeit NAR® Pomegranate Juice.

### Golden Foods Has Already Shown It Will Prevail

Golden Foods has shown that it is the sole owner of the NAR® trademark and that, as such, it also has shown that it has never given anyone authority to use the NAR® trademark. It has shown that Golden Foods has no adequate remedy at law, in that each bottle of the counterfeit NAR® Pomegranate Juice harms its reputation for pomegranate juice, and gives anyone consuming it the false impression that products of Golden Foods are of low quality.

Golden Foods has shown that Hyson is the source of the counterfeit NAR® Pomegranate Juice in the marketplace. It has shown that by Hyson's action, the damage to the NAR® trademark cannot be compensated only by money damages, and that an injunction was and remains the only appropriate remedy in this suit.

Golden Foods has shown that the harm to Hyson is negligible in comparison to the harm to Golden Foods. And, as is further discussed herein, Hyson had more than a mere mistake as the basis for its bringing the counterfeit NAR® Pomegranate Juice to the market. Hyson has, in fact, a pomegranate juice, in a bottle of similar configuration to the counterfeit NAR® Pomegranate Juice containers, and labeled in a manner so as to present substantially similar trade dress as compared to the counterfeit NAR® Pomegranate Juice labels. At most, Hyson will endure lost sales due to the agreed upon recall and injunction. Golden Foods on the other hand, will suffer, if the injunction is not obeyed, huge harm to its entire brand line and product line, in addition to the destruction of the NAR® Pomegranate Juice trademark and reputation for excellence the NAR® Pomegranate Juice enjoyed until Hyson's introduction of the counterfeit

product, and their subsequent inadequate, or rather, compelte disregard for the injunction ordered by this Court November 25, 2009.

Based upon the trademark registration alone, Golden Foods will prevail in terms of policing the use of the NAR® Pomegranate Juice trademark in commerce in the United States.

And finally, there is the harm the public is confronted with due to the nature of Hyson's product. The counterfeit NAR® Pomegranate Juice is a counterfeit food product. That fact alone means that the public is confronted with the inherent dangers counterfeit food products bring, *because the food product is counterfeited.* Plus, although Golden Foods is the only named and identified source of the counterfeit NAR® Pomegranate Juice, it has had **no ability whatsoever to control the quality, source, contents, purity, safety, or nutritional qualities of the counterfeit NAR® Pomegranate Juice.**

All of the foregoing is in accord with the Seventh Circuit standards for issuance of a preliminary injunction, and based on the foregoing and the case law governing the management of trademark infringement injunctions in the Seventh Circuit, show that this Court has acted properly in ordering the injunction agreed to by Hyson in the November 25, 2009 order, and in subsequent court appearances of the parties, through their attorneys, in the several *unsuccessful* efforts of the Plaintiff to get Hyson to obey the lawful order of this Court. [See: *Jones v InfoCure Corporation*, 310 F 3d 529 (7th Cir. 2002), *Rust Env't & Infrastructure, Inc., v Teunissen*, 131 F 3d 1210 (7th Cir. 1997)]

Furthermore, the injunction was necessary, and obedience to its lawful terms is imperative based upon the requirement for injunction to prevent irremedial damage to the Plaintiff Golden Foods by Hyson's ongoing flaunting of the terms of an order they agreed to on November 25, 2009. In this case, a preliminary injunction is not necessary to preserve the *status*

*quo* as of the time of the entry of the order, but to prevent irremedial harm by means of putting a product of inferior quality to the trademarked NAR® Pomegranate Juice as distributed by Golden Foods into commerce. [See: Denlow, M, (Magistrate Judge, US Dist. Ct. ND Ill.), *The Motion for a Preliminary Injunction: Time for a Uniform Federal Standard*, The Review of Litigation,Vol. 22:3, pp 495-539 (Summer 2003)]

Based upon the foregoing, Hyson has now shown its true colors, and has shown through a period of almost TEN weeks (**10 weeks!**), that it has no intention of obeying a lawful court order.

### This is More Than "They Just Don't Get It"

On Friday, January 22, 2010, this Court held a status hearing wherein Hyson's counsel appeared and submitted their full report of their efforts at recalling that counterfeit, fake, tasteless, infringing, food product that Hyson has openly sold under the trademarks, identifiers, web address, domain name, and packaging of Golden Foods, namely counterfeit NAR® Pomegranate Juice.  But, the recall was from the start, on Hyson's part, flawed.  Please see the pictures attached hereto as Exhibit D, and Exhibit E, a list of the stores where Hyson *allegedly*\* recalled the counterfeit NAR® Pomegranate Juice.

Of the stores on the list provided [Exhibit E], precisely NONE had the all counterfeit NAR® Pomegranate Juice removed and recalled.. That means the counterfeit NAR® Pomegranate Juice is still clogging the market, still infringing, and still causing damage to Golden Foods and the NAR® Pomegranate Juice trademark.

That's right.  Read correctly, the paragraph preceding is correct.  NONE, not a one, as in zero of the stores checked by Golden Foods had a lack of counterfeit NAR® Pomegranate Juice on display for sale.  EVERY STORE CHECKED, and a few not on the list provided by Hyson,

all still had the same amounts of counterfeit NAR® Pomegranate Juice on display. A few had MORE counterfeit NAR® Pomegranate Juice than they had on hand or on display, the week prior. This shows that Hyson did not, and willfully did not, comply with the Courts directions, order or even the common sense meaning of the term "recall".

The undersigned counsel also was in a store listed on the Defendant's list of venues where counterfeit NAR® Pomegranate Juice was recalled, and can certify that she observed the very troubling presence of *more* counterfeit NAR® Pomegranate Juice present in that store than was present two weeks earlier. No reasonable person of even average intelligence would refer to such a situation as evidence of a successful recall.

But, there is more. There is a reason for the counterfeit NAR® Pomegranate Juice sold by Hyson, USA. Rather than put a product into the marketplace and let the market decide whether or not that new product is an improvement on the products already there, Hyson decided to cheat. To steal. To rob. Hyson acted with cold-hearted intent to impugn the good name of the real NAR® Pomegranate Juice. And they did it with the name, *the very registered and trademarked name*, of the real NAR® Pomegranate Juice in a package holding an inferior, counterfeit food product. And this is where a little additional background is needed.

### Golden Foods Has Done No Pomegranate Juice Business in Azerbaijan

This is important, because Hyson would have this Court believe that there is a connection between a bottler of juice in Azerbaijan and an unpaid bill, a shipment of a single container of NAR® Pomegranate Juice to the US from Azerbaijan and a consignment of that juice from Azerbaijan. But, **this is not true.**

In fact, Golden Foods obtains its NAR® Pomegranate Juice from Turkey or from the US. [Declaration of Mansour Amiran attached hereto as Exhibit F.] **The Only source of the counterfeit NAR® Pomegranate Juice was Hyson**.

**GOLDEN FOODS HAS NEVER PURCHASED POMEGRANATE JUICE, NOR HAS IT IMPORTED POMEGRANATE JUICE, FROM AZERBAIJAN. GOLDEN FOODS HAS NEVER PURCHASED POMEGRANATE JUICE NOR HAS IT IMPORTED POMEGRANATE JUICE FROM RUSSIA.**

In short, there is no way that any attribution of source that would link Golden Foods to any country other than its normal sources in the Middle East or California (USA), are pure fabrication on the part of Hyson. Golden Foods has never given any entity permission to use its valuable and fanciful NAR® trademark in any way, shape or form. In particularity, it never gave any entity thus far named by Hyson any authority to manufacture, package, sell, distribute, import, export, or otherwise use its valuable NAR® Pomegranate Juice trademark.

Simply put, Golden Foods has never purchased or imported any pomegranate juice from Russia or Azerbaijan. There is no evidence to the contrary, except in the event such evidence were fabricated.

### *Cui Bene?*

When one asks that question, one arrives at the real reason for the counterfeit juice appearing in the market. Why would a company go to such lengths to perpetuate known acts of intentional trademark infringement, when under the Lanham Act, the penalty for intentional infringement is a $1 Million award to the victim that has suffered intentional trademark infringement?

Why indeed, as will be shown, the 'why' is to benefit Hyson only, and to improve the chances Hyson will have in the marketplace for its new Hyson Pomegranate Juice, [photo attached as Exhibit G].

And why would an intentional infringer perpetuate the infringement? Why would an infringer increase the amount of damages owed due to wilful and wanton disregard of a lawful order of the US District Court. Why would Hyson risk contempt, fines, and hefty damage claims by perpetuating the presence in the marketplace of the counterfeit NAR® Pomegranate Juice? To what end?

Well, the end is, for those who respect the laws of the US, rather than the laws of the jungle, is pretty much beyond the pale. Even the undersigned, in almost 30 years of practicing trademark law, could never have suspected this, because the event of such an outrageous level of trademark infringement as has occurred here by Hyson, is so rare that neither I nor the fifteen other trademark attorneys queried with the hypothetical that matched the facts of this case had ever even seen such a level of intentional infringement.

Not one, not a single trademark attorney of a group that had amongst them a total of 450 years experience, could recall an instance where an infringer, having been told twice to do a complete recall, required two court appearances, and even then, even after the attorney went to court trying to convince this Court that the defendant/client was serious about the recall, still left tens of cartons of the infringing product on store shelves more than a week after the second court appearance.

And now we are at the Second Motion for Contempt..., a fourth or fifth appearance in court, the last of which was Friday, January 22. And still, even today, not a single store that had

carried the infringing NAR® Pomegranate Juice was free of the offending product. By January 25, surely those stores listed on the recall recap sheet provided by Hyson would be completely rid of the offending, counterfeit NAR® Pomegranate Juice, right? Right?

Wrong!

Look at Exhibit A, D and E, and there it is. Cold, hard, documented facts.

Look at the declarations and the material in this and the January 15 Memorandum, filed with this Court.

Look at Exhibits D and H, and there are those photos that are so uncomfortable for Hyosn. Again. Pictures of the Hyson counterfeit juice from prior to January 15, and then again after January 22, the court appearance where Hyson's counsel *assured the Court that Hyson had complied.* (Wink, wink, nudge, nudge, and so on.) HYSON HAS DONE NOTHING TO COMPLY WITH THE COURT'S ORDER OR THE COURT'S DIRECTIVES. IT HAS NOT DONE WHAT ITS COUNSEL HAS ASSURED THE COURT HAS BEEN DONE. And, there are photos, receipts, more photos, more receipts and video. The very items that were supposed to be recalled remain on the shelves, and in fact, there are more counterfeit cases of juice in the market in Chicago than there were before the order was issued. Hyson, in short, has thumbed its corporate nose at this Court and at the very legal system of the US.

*Quod erat demonstrandum.* The photos, receipts and documentation is all there. Hyson has not complied, at all, with the recall and injunction. The evidence speaks for itself.

Or, more accurately, *hoc non est quod demonstrandum erat est.* That is, the evidence shows the total lack of obedience to the injunction order, the *November 25, 2009Agreed Order* by Hyson.

It is enough to make the plaintiff, Golden Foods team want to stand in the middle of any of the numerous grocery stores where the infringing cartons of counterfeit NAR® Pomegranate Juice are stacked on display for all and sundry and shout in the manner of, and with the frustration of, Howard Beale in that memorable film, *Network*. Unfortunately, Golden Foods has a reason to shout out those memorable words that rang forth in the closing scenes where frustration is serious, and the defendant is acting as if there is a totally inept system in place that will protect the defendant from its own reckless disregard of a lawful order of the US Courts. Golden Foods is counting on this Court being soft on intentional infringement, intentional copying and repeated failure to comply with a simple order to stop infringing the registered trademark of Golden Foods.

### **The Truth Is, Hyson Has Demonstrated No Intention of Fully Stop Its Infringement**

The attached receipts indicate that there are at least six stores, stores which were identified by the defendant's counsel as being the stores where the product was retrieved in the recall. (Fool me once, shame on you.)

And when queried, one store manager at one of those stores, related this. The manager was told by a Hyson representative, "Give us a few cartons, keep the rest, and stick it to Golden Foods."

Such a statement does not reflect the language of a compliant or even repentant trademark infringer or a compliant if minimally repentant food product counterfeiter. Rather, that is a stellar example of willful infringement at its very best and boldest. Or worst and most disgusting.

At this rate, Hyson has already gotten past, "fool me twice". Or attempted to fool this Court multiple times in this case. They have tried to fool this Court through their reports and through the glowing statements of compliance, that are pure mendacity when compared to the

facts on the ground, or the facts on the store display shelves. This level of contempt is either being assisted by the attorneys representing Hyson, or Hyson is criminally not paying attention to the attorneys representing them.

There are two choices. This Court could allow this insane use of Golden Foods own trademark in the market to hurt them more and more, day after day, bottle by bottle and case by case of counterfeit NAR® Pomegranate Juice, totally destroying Golden Foods good name, or it can make Hyson halt, stop and cease its infringing ways. There is no middle ground. It is now time to get more than serious. It is time to make this defendant understand that there is no more "just a few more days" to be given, no more lead time, no more lenience. No more.

This Court must impose high fines to make Hyson understand that eight weeks ago would have been a wonderful time to actually recall the product as was ordered. And, this Court must also order destruction of the counterfeit NAR® Pomegranate Juice, under Court appointed supervision. And, this Court must also require Hyson to publicly visit each and every one of the stores involved, with a Court appointed supervisor, and get a complete recall of the product, namely the counterfeit NAR® Pomegranate Juice, and impose a fine that is meaningful for contempt of court by not following the court's lawful order, entered November 25, along with attorney's fees for Golden Foods counsel. And, this Court should also make this case exceptional, for the amount of time and degree of infringement, is in fact exceptional.

These demands are made so that, in this case, the laws of the United States, the lawful orders of this Court, the rights of trademark holders, the rights of the public to be protected from counterfeit food products and counterfeited trademarks and the force of law set forth in Orders of the courts of the United States have meaning beyond the papers they are written upon.

Hyson, and possibly their attorneys seem incapable of understanding the need to obey the orders of the US Courts.

Hyson and their attorneys both must answer for the contemptible disregard of the Order of this Court.

**APPARENTLY HIGH FINES MUST BE IMPOSED
AS FINES AND CONTEMPT PENALTIES ARE THE
<u>*ONLY*</u> LANGUAGE HYSON WILL UNDERSTAND**

Hyson has not understood obedience to an agreed order of the US District Court, entered November 25, 2009, and has acted as if their compliance is "optional."

Hyson has not understood the reason for their being in Court for a motion for contempt on January 19, 2010. Yet, they agreed, again through their attorney that they would stop the infringement.

Hyson has not understood that a recall means recalling every carton, bottle, jar, label, leaflet, flyer, advertisement and material object bearing the Golden Foods NAR® Pomegranate Juice label, the Golden Foods UPC code, the Golden Foods address and name and phone number, and the Golden Foods web address, for storage in their own warehouse until disposal plans can be finalized.

It is time to assess fines for glaring contempt of court. It is time to make Hyson understand that their outrageous counterfeiting of food products, and their outrageous copying of the product label and identifiers, and the registered trademark of Golden Foods, namely the NAR® Pomegranate Juice mark, attached here as Exhibit D.

**HYSON'S *RAISON D'ETRE* FOR COUNTERFEITING NAR® POMEGRANATE JUICE**

The reason for the counterfeiting is simple. It finally all came together with a single picture, attached hereto as Exhibit G. Hyson has their own pomegranate juice, marketed under its own name, that was recently introduced in the market. Yet, they could gain no real traction for the product because the Golden Foods, superior quality, real NAR® Pomegranate Juice had already taken over most of the market for pure, natural, anti-oxidant packed pomegranate juice. NAR® Pomegranate Juice was the market leader, and as such, the law of the jungle was used by Hyson, not the law of the marketplace. They decided to assassinate the competition, without applying fair market tactics.

Hyson set out to market their own pomegranate juice, under the Hyson name and trademark, and decided to clear the path for their own pomegranate juice by eliminating the competition from the best pomegranate juice in the market. Look at Exhibit G, a photo of Hyson's new pomegranate juice. Look at the counterfeit NAR® Pomegranate Juice trade dress. Compare the two. (Exhibit I.) And there it is. The very reason for Hyson's delay in obeying this Court's order, and their denigration of the Golden Foods NAR® Pomegranate Juice is right there. They are tyring to destroy Golden Foods NAR® Pomegranate Juice trademark, so that they can embed the trade dress of their counterfeit NAR® Pomegranate Juice, and recruit the public to the Hyson Pomegranate Juice, through this convoluted and despicable destruction of the real Golden Foods NAR® Pomegranate Juice. It is all there in three exhibit photos, attached as Exhibits H, I, and the photo of real NAR® Pomegranate Juice attached as Exhibit J, and to enforce the trademark aspect of this claim, see also Exhibit K, the trademark registration papers for Golden Foods NAR® Pomegranate Juice '258 registration.